THE STATE, ON THE RELATION OF THE BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY, *vs.* SIDNEY M. LAYTON.

1. The act of February 20th, 1799, (*Nix. Dig.* 898) which authorizes the establishment of workhouses, places them under the control of the boards of chosen freeholders in the respective counties to which they belong; they are public institutions under the control of the board of freeholders as a corporation, and while the board have power to appoint a master of the workhouse and other officers and servants, if necessary, they have no power or right to make any contract which places the workhouse or its inmates beyond their control and under the entire management and charge of another party.

2. The board of chosen freeholders of Hudson county made a contract with L., by which it was agreed that he should have the entire charge and management of the jail and workhouse of said county, and by and with the consent and co-operation of the sheriff, to act as jailor, and board and employ the prisoners upon certain specified terms—the contract to continue for five years. *Held*, that the contract was void, that the board of freeholders might so declare it at any time, and that if L. refused to surrender possession to the freeholders a writ of *mandamus* was the proper remedy to put the board in possession.

3. Previous to the act of 1857, the jail of Hudson county (like the other jails in this state) was under the government and control of the sheriff, and the board of freeholders had no right to appoint a jailor or any person to take charge of the jail, jailor's house, or the prisoners; and although the act of 1857 gave to the board of freeholders the control of the jail, yet it gave them no right to make a contract which would transfer the control and entire charge and management of the jail, and the prisoners therein, to another party.

On motion for *mandamus.*

Argued at November term, 1859, before the CHIEF JUSTICE and Justices HAINES, VREDENBURGH, and WHELPLEY.

*Scudder* and *Zabriskie*, for motion.

*Jelliffe* and *Dayton*, contra.

The CHIEF JUSTICE. This cause was argued upon a motion to make absolute a rule upon Sidney M. Layton

to show cause why a *mandamus* should not issue commanding him to vacate and surrender the office of jailer of the county jail of the county of Hudson, and surrender to the board of chosen freeholders, or to such jailer as they have appointed, or may see fit to appoint, the possession of the jail, workhouse, and dwelling house in the said county of Hudson. The object of the application is to compel the restitution of the jail, workhouse, and jailor's house of the county of Hudson, by a person having them in possession, and claiming to be jailer and keeper of the workhouse, to the board of chosen freeholders of the county.

On the 31st of October, 1856, an agreement was entered into, which is recited to be made between Layton, of the one part, and the board of chosen freeholders of the county of Hudson, of the other part. It does not, however, purport to be executed by virtue of any corporate authority, nor is it under the corporate seal, but is executed under the hands and seals of five individuals, who were probably a committee of the board. As the terms of the agreement appear to have been subsequently recognized by the board, and as no exception was taken to its validity upon the argument, it will be assumed, for the purposes of the present inquiry, to have been formally executed by the board, in its corporate capacity. By the agreement, Layton stipulates, on his part, that he will, on the first of May, 1857, take the entire charge and management of the county jail and workhouse for the county of Hudson, and by and with the consent and co-operation of the sheriff, will receive all persons that may be committed to said county jail and workhouse, and board and employ them upon certain specified terms. The board agree that Layton, with the consent of the jailer, shall occupy the jailer's house, and that they will erect for him a workhouse, as an addition to the jail, and supply it with certain machinery and power. Under this agreement, a workhouse was erected; Layton took possession of the buildings, per-

x*

forming the duties of jailer and master of the workhouse, and has since continued in possession.

By an act of the legislature, passed on the 27th of February, 1857, the custody and charge of the jail of the county of Hudson was transferred from the sheriff, and declared to be in the board of chosen freeholders and such jailor as they should appoint. *Pamph. Laws* 1857, *p.* 40. The board of freeholders were, by the act, authorized to appoint the keeper of the jail, and to remove him by a vote of two-thirds of all the members of the board. The act further provides that the jailer shall be master of the workhouse, and that the workhouse shall be part of the common jail, and authorizes the board of freeholders to prescribe regulations for the employment and keeping of the prisoners and their contract for the labor.

This statute was passed after the date of the agreement with Layton, but before it went into operation. At the date of the agreement, the board of freeholders had no control of the jail and no power to enter into the stipulations respecting the jail contained in the agreement. The agreement was probably made in anticipation of the passage of the act of 1857, and relying upon that act for the sanction of the contract. It does not appear that any formal appointment of jailer was made by the board after the passage of the law, or that Layton ever gave bond for the performance of his duties as jailer under the provisions of the act.

If Layton held his office by appointment of the freeholders under the act of 1857, as seems to have been the understanding of both, he has been formally removed under the provisions of the act by a vote of two-thirds of all the members of the board. He is neither jailer nor keeper of the workhouse, and has no right to the possession of the buildings or to exercise the functions of either officer.

If he held his office not under the act of 1857, but under the act of 1799, for the establishment of workhouses,

State v. Layton.

it is equally clear that he had not, and never had any right whatever to the office of jailer or to the possession or control of the jail. That act provides for the establishment of workhouses in the several counties of the state. It places the workhouse of each county under the superintendence and government of the board of chosen freeholders, and gives to the corporation authority to appoint and hire some fit person to be master of the workhouse. It makes the workhouse, like a jail, a penal institution, and confers upon the keeper powers analogous to those of jailer. But the two institutions are totally distinct. Prior to the act of 1857, the jail continued under the control and government of the sheriff. He alone had the custody of the building and the power of appointing the jailer. The entire contract of the board with Layton, so far as it relates to the jail or jailer's house, was a nullity; nor was its character at all altered by the intention of the clause providing for the consent and co-operation of the sheriff. If the sheriff saw fit to constitute Layton his jailer, his authority to execute the office was derived exclusively from the sheriff, and ceased with the sheriff's term of office. It was not in the least degree strengthened or confirmed by the contract with the freeholders.

But it is argued that the contract of the board with Layton, so far as it regards his employment as keeper of the workhouse and his right to the labor of the convicts, is a valid and subsisting contract, and cannot be annulled at the pleasure of the board; and that having been made for the period of five years, which is not yet expired, his amotion is unlawful. Whether the act of 1799 conferred forever upon the corporation to contract for the board and labor of the inmates of the workhouse for a term of years, is immaterial to the present inquiry. If the corporation had a right to make, and did make a valid contract with Layton for the board and labor of the prisoners, which they have unlawfully violated or refuse to execute, he has his remedy upon the contract. That contract

has no necessary connection with the office of keeper of the workhouse, and the simple inquiry is, whether the board of freeholders, under the act of 1799 for the establishment of workhouses, have a right to bind themselves, to appoint a keeper for a term of years, and thereby deprive themselves and their successors of the right of removal, and the consequent control of the officer.

The workhouse under our statute, unlike the workhouses of England, is essentially a penal institution. It contemplates the twofold object, the punishment of crime and vagrancy, and the relief of the community from the burthen of the expense by the labor of the inmates. The office of keeper is in many respects analogous to that of jailor. The workhouse, like the jail, is the prison of the county, in which convicts sentenced by the court to hard labor and imprisonment are to be imprisoned. This prison and these convicts are, by express provision of the statute, under the direction, superintendence, and government of the board of freeholders, who are empowered to make such regulations, ordinances, and by-laws relative to the well ordering and governing of the workhouse, and keeping the persons confined therein to labor, and the manner of their being confined, as they shall from time to time deem necessary or convenient. The act clearly contemplates that the workhouse and its inmates shall be as essentially under the control of the corporation as the jail and the prisoners are under the control of the sheriff. But how is the statute to be executed if the board may deprive itself of all control over the workhouse and its inmates by a contract for years? By the terms of the contract, Layton is authorized to employ all persons committed to the workhouse for labor ten hours a day, each and every day, except Sundays, during the continuance of the term, in such labor as to him shall seem meet, and to employ such number of workmen as he may find necessary for the prosecution of his business in the workhouse. The contract enures to the heirs, executors, administrators, or

State v. Layton.

assigns of the contractor. If the time for labor or the nature of the employment is found prejudicial to the health of the prisoners, or inconsistent with their safe-keeping; if the introduction of other laborers under the terms of the contract is found inconsistent with the discipline or security of the workhouse, is there no remedy for the evil? Is the contract assignable? May the board of freeholders thus strip themselves and their successors for years of all control over a public institution, with its inmates committed by law to their guardianship? I think it will hardly be pretended that the corporation to whose care and guardianship the workhouse is confided can thus strip themselves of all control over the government of the institution, and the health and safekeeping of its inmates. Whatever right the contractor may have under his contract, he cannot have the right of excluding the board of freeholders from the control and government of the institution or the removal of the keeper. The keeper is as essentially the agent of the freeholders in the management of the workhouse as the jailer is the agent of the sheriff in the government of the jail. The power of removal must be in the board, and must be exercised at their discretion; and when exercised, the court ought not to interfere. Assuming, then, that the contract between the board of freeholders and Layton was executed under the provisions of the act of 1799, it did not deprive the freeholders of the power of removing him from office, if, in their judgment, the security of the prisoners required a change, nor from appointed another keeper in his place.

Under the act of 1857, new and enlarged powers are given to the board of freeholders of the county of Hudson. The jail is placed under their charge and custody. They are required to appoint the jailer for a term of years, with power of removal. The jailer is to be keeper of the poorhouse. For most purposes, the jail and workhouse become essentially one institution, subject to all the laws

which regulate the jail and its keeper. Of that entire institution Layton is now in possession, claiming to exercise, and actually exercising the functions of jailer and master of the workhouse. The board of freeholders have removed him from office, and demanded possession, and upon his refusal they ask the aid of the writ of *mandamus*.

Is this a proper occasion for the exercise of the power of the court? It would be difficult to conceive of a case more directly within the principle stated by Lord Mansfield in *Rex* v. *Baker*. "When there is a right to execute an office, perform a service, or exercise a franchise, more especially if it be a matter of public concern, and a person is kept out of possession or dispossessed of such right, and has no other specific legal remedy, this court ought to assist by *mandamus*, upon reasons of justice and upon reasons of public policy, to preserve peace, order, and good government." 3 *Burr.* 1266. Jails and their custody are peculiarly a public concern. They can be erected only by authority of law. They belong to the sovereign. 2 *Inst.* 100 ; *Com. Dig.*, " *Imprisonment* " *A;* *Bac. Ab., Gaol and Gaoler A ;* 8 *Term Rep.* 176.

Their custody is under the control of the law. They are essential in the maintenance of law and in the enforcement of public police and good government.

The relators are entitled to the custody and control of the jail and workhouse. They are kept out of possession by the defendant. The jail and workhouse are without a lawful keeper. The public peace and good government are involved. A prompt and efficient remedy should be applied. There is no other adequate specific remedy for the wrong.

The rule for a *mandamus* should be made absolute.

WHELPLEY, J. This is a motion for a writ of *mandamus*, to be directed to Sidney M. Layton to vacate and surrender the office of jailer of the county jail of the county

of Hudson, and to surrender to the relators, or to such jailor as they have appointed, or may see proper to appoint, the possession of the jail, workhouse, and dwelling house attached to it.

Layton is in possession of the jail, workhouse, and dwelling house under a contract entered into between him and the relators, dated the 31st August, 1856. So he claims. He was appointed master of the workhouse of the county on the 10th December, 1856, by a resolution of the board, subject to the provisions of the act of 20th February, 1799, *Nix. Dig.* 898. This act authorizes the board of chosen freeholders of every county in the state to build or purchase a workhouse at such place in the county as they may think fit. The second section pro vides that the workhouse shall be under the direction, superintendence, and government of the corporation, who are authorized to appoint and hire some fit person to be master of the same, and other officers and servants, if necessary, and to make such regulations, ordinances, and by-laws relative to the well ordering and government of the same, and keeping the persons confined therein to labor, and the manner of their being confined, and relative to the due execution of the act, as they shall from time to time deem necessary or convenient, provided the same be not contrary to the constitution or laws of this state. The 9th section of the act requires the master of the workhouse to keep an exact account of the time of the commitment and liberation of the offenders, of their maintenance, and the materials provided for them to work, and of the earnings and proceeds of their labor, and present the same to the board at their annual meeting and whenever required, and that the master shall pay the amount of such earnings and proceeds to the corporation at that time, and that the said proceeds shall be appropriated by the corporation to the use of the county. The supplement of March 4th, 1847, authorizes the conversion of so much of the common jails as they may think proper into a workhouse.

The contract under which Layton claims was made before the erection of any workhouse by the county, and stipulates for the building of one by the county. It was also before the passage of the act of February 27th, 1857. *Laws of* 1857, 40.

This act requires the workhouse to be under the control of the board, and contemplates the appointment of a master and such other servants as may be necessary, who are to act not as independent officers appointed for a definite term, and irremovable during that term, but as the servants and officers of the board, responsible to them and removable at pleasure. The materials for the work are to be provided by the board, and they are to have the profits of the work and manufactures.

It does not authorize the contracting out of the work of the prisoners for a definite period and upon certain terms. The board must be the responsible governors of the workhouse—that cannot be farmed out: the law imposes the responsibility upon them—they cannot shift it by contract upon other shoulders. It gives no authority for the appointment of a master, who by contract can be made irremovable for a term of years. It does not authorize such a contract as was entered into by Layton with them. That contract is in clear contravention of the policy and whole scope of the act, as well as its plain letter. That contract, being unauthorized by the act, can give Layton no right to retain possession of the jail as a workhouse or the dwelling house attached; for the purposes of this motion, it should be considered void.

It is not necessary now to decide whether Layton, upon being compelled to give up possession of the jail, workhouse, and dwelling house, can have recourse to the board for damages, either on the contract or otherwise.

Upon the argument, his counsel disclaimed for him being jailer, but claimed that he was master of the workhouse and contractor for the work of the prisoners for five years from the 1st May, 1857.

On the 12th of October, 1859, a resolution passed the board removing Layton from the office of jailer, by a vote of two-thirds of all the chosen freeholders, for the time being. On the 9th November, 1859, the board appointed Newkirk jailer. On the 1st November, 1859, a notice was served upon Layton to surrender the jail and buildings to the board, under whose control it is placed by the act of 1857. The jail, workhouse, and dwelling still remain in his possession. By this appointment of a jailer under the act of 1857, the appointment of Layton as master of the workhouse was revoked; for that act declares that the jailer shall be master of the workhouse.

The jailer appointed by the board is entitled to the possession of the jail, workhouse, and dwelling attached. The first section of the act of 1857 so declares. The board is, by that act, made responsible for the safekeeping of persons confined on civil process, and are liable for escapes, yet their jailer is denied the possession of the jail.

It seems to me that great and important public interests require a speedy termination of this controversy, and that the constituted authorities should be put in immediate possession, and that the writ of *mandamus* is the proper remedy. The office of a jailer is of a public nature.

The writ of *mandamas* has been, by a great number of cases, held to grantable, as well to admit him who has a right, as to restore him who has been wrongfully displaced, to any office, function, or franchise of a public nature, whether spiritual or temporal, judicial or ministerial. *Tapping on Man.* 172, 173; 3 *Bl. Com.* 110; *Baggs' case*, 11 *J. Rep.* 93; 2 *Sid.* 112; *Audley's case, Poph.* 176; *Middleton's case*, 3 *Dyer* 332; *Rex* v. *Goodwin*, 1 *Doug.* 397; 5 *Com. Dig., Title Man. A,* 22; *Rex* v. *Clapham,* 1 *Wils.* 305.

There is no other adequate remedy. Layton has disclaimed holding the office of jailer. The office of master of the workhouse, as a distinct office, was abolished by an

act of 1857, § 5, which declares that the jailer shall be master of the workhouse; so that Layton is not now in possession of any office with a colorable title or otherwise, and a writ of *quo warranto* is not the proper remedy.

Layton came into possession of those buildings colorably, at least *virtute officii*, as master of the workhouse That office has been abolished as a separate office. He is therefore in possession of public buildings without right, which he ought to be compelled to give up by the prerogative writ of *mandamus.* These buildings are, like the insignia of office, official rolls. *Sheriff of Nottingham's case*, 12 *Car.* 2; *Hurst's case*, 1 *Keb.* 387; *Book's records official papers; Town Clerk of Nottingham's case*, 1 *Sid.* 31; *Rex* v. *Wheeler*, 1 *Barn.* 99; *Com. Dig. Tit. Man. A., B.*

The writ will be granted to command a public officer to deliver to his successor in office records, &c., for they concern public justice.

A public officer whose term of office has expired has not such a possession, as against the sovereign power, of the buildings pertaining to the office as to make it necessary to remove him by action of ejectment. He is but an intruder. The possession of the public buildings is in the municipal power, not in him. It would be an intolerable doctrine, that a secretary of state, a clerk of this court, a state treasurer, should after the expiration of their offices retain possession of the portion of the state house assigned to them, and put the state to an action of ejectment to regain possession.

These cases, like the one now before the court, are cases where a remedy by ejectment is utterly inadequate where public justice and the exigencies of government absolutely require prompt action; and if there were no precedent for the issuing of the writ, I should be inclined to make one.

The cases in which the writ have been issued are almost innumerable, and to issue it in the case now before the court is but to apply admitted legal principles to a new

state of facts ; a remedy is not invented, but applied in a new and appropriate case.

Justices HAINES and VREDENBURGH concurred.

SEE *same case*, 4 *Dutch.* 575; CITED *in O'Donnel* v. *Dusman*, 10 *Vr.* 680.