15322

FLOYD v. PARKER WATER AND SEWER
SUB-DISTRICT *ET AL.*

(17 S. E. (2d), 223)

*Mr. J. Venable Jester,* of Greenville, S. C., Counsel for Petitioner,

*Mr. J. Wilbur Hicks,* of Greenville, S. C., Counsel for Respondents,

November 4, 1941.

The unanimous Opinion of the Court was delivered by Mr. Associate Justice Fishburne:

—This is an application by a citizen, resident and taxpayer of Parker Water and Sewer Sub-District of Greenville County to the Supreme Court in its original jurisdiction, to restrain the respondents from selling bonds for the purpose of providing fire protection and for garbage disposal for the sub-district, and from levying a tax to pay the bonds and pay for the garbage service and the upkeep of the fire equipment.

For an intelligent understanding of the issues raised by the petition, return and reply, we deem it necessary to state as briefly as we may the factual background from which arise the questions which will have to be decided.

By an Act approved March 30, 1925, 34 Stat., 744, Greater Greenville Sewer District was established, consisting of Greenville School District and Parker School District, and was made a "body politic," the purpose of the corporation being to provide "better sanitary conditions for its people."

The Act authorized necessary surveys, and the commission appointed to govern the district was required to make a report with recommendation to the County Legislative Delegation.

On March 23, 1926, an Act was approved, 34 Stat., 1537, amending the former Act and giving the Greater Greenville Sewer District Commission "power to establish, extend, enlarge and maintain, conduct and operate sewer systems, Sewer Lines and Sewer Mains in said District; to construct, establish and maintain such water lines and pipe lines as may be necessary; * * * and generally to do all things necessary for the purpose of creating and maintaining a sewerage system in said District adequate for the protection of health in said District and for the establishment of proper sanitary conditions therein: Provided, however, That said Commission shall not spend any money for the establishment and construction of any lateral lines or construction of said system other than the trunk lines and disposal plant or plants, until such time or times as said Greater Greenville Sewer Commission has required the property owners in communities not now having laterals to make arrangements whereby cost and construction of said lateral lines shall have been assumed by such property owners."

The governing Acts were again amended, 36 Stat., 864, approved March 16, 1929, directing the Greater Greenville Sewer District Commission to have its area surveyed for the purpose of subdividing it into, (A) Sub-districts which already have lateral lines installed; and, (B) Sub-districts which have no lateral lines installed.

In Class (A), no further action was necessary. In Class (B), provision was made for calling an election for the purpose of, "(a) incorporating said sub-district; (b) allowing the sub-district to issue bonds or certificates of indebtedness for an amount necessary to install and maintain water and sewer lateral lines therein and connect the same with the main trunk line or lines, and (c) to provide for * * * a

tax * * * to pay the * * * bonds." It was further provided that Greater Greenville Sewer District might purchase the bonds of the sub-districts.

In 1930, Act March 25, 36 Stat., 1804, further provision was made for holding elections to issue bonds in sub-districts classed as "B".

Pursuant to the above statutory provision, Greater Greenville Sewer District Commission thereafter had the area of the district subdivided into proper proposed sub-districts, one of which was Parker Water and Sewer Sub-district, classed as "B", a sub-district having no water and sewer lines. Such further proceedings were taken as resulted in an election being held in this sub-district on March 3, 1931, and the vote being favorable to organizing the district and issuing bonds to install water and sewer lines, on that date a resolution was adopted declaring Parker Water and Sewer Sub-District duly organized, and that it was a body "politic and corporate"; and on April 17, 1931, the Governor of the State duly commissioned the committee to govern this sub-district.

Pursuant to authority the original committee or its present successors, the named personal respondents, have issued bonds and installed sewer lines in most of the district, and some water lines for domestic purposes, but a large part of the district is served by water lines owned by private individuals or companies, which charge any fee they can get for tapping on to their lines, and the entire district has no adequate water lines, hydrants, etc., to enable it to provide fire protection to the citizens and residents of the district, and the district does not own and cannot provide any firefighting equipment.

On April 3, 1933, an Act was approved, 38 Stat., 898, which further enlarged the powers of the Sub-District Committee but this Act need not be stated here because it was further amended by Act 408 of the Acts of 1941, which provided that a committee governing a sub-district, "Shall

have and exercise any and all of the following powers: To construct * * * and operate sewer lines * * *; to construct * * * and operate water lines * * *; to furnish an adequate supply of water for all purposes * * *; to furnish adequate fire protection for the district *. * *; to collect garbage in the district and to dispose of it as they find reasonable, including the acquisition of such equipment as is needed for this purpose, * * * and generally to do all things necessary for the .purpose of creating, maintaining, and operating a water and sewer system and fire protection in said District, adequate for the protection of health, property and the comfort of the inhabitants thereof, and for the establishment of proper sanitary conditions so far as they pertain to the operation of water and sewer system. * ·* *"

Also in 1941, the legislature passed Act No. 406, approved May 30, 1941, which authorized an election in Parker Water and Sewer Sub-District for the purpose of voting on $150,000.00 in bonds. Section 1 reads in part: "* * * proceeds of which shall be used by the said Committee to construct, establish, enlarge and maintain, conduct and operate sewer lines and sewer mains, water lines and pipe lines in said district, and to furnish an adequate supply of water for all purposes in the district and to furnish adequate fire ·protection for the district."

Other pertinent sections of the Act are as follows:

Section 5. "Greater Greenville Sewer District Commission shall have the power and authority to purchase the bonds issued under the provisions of this Act, and to pay for the same out of the proceeds of the sale of bonds authorized to be issued by said Commission, the authority to make such purchase being hereby expressly given, and said Commission shall upon payment of the bonds by said sub-district pay off or cancel the bonds issued by it for the benefit of such subdistrict."

Section 6. "Until the principal and interest of all bonds issued under this Act shall be fully paid, there shall be levied

annually upon all taxable property in the sub-district a tax sufficient to pay such interest as it becomes due, and to provide a sinking fund sufficient to pay such principal at the date or dates of maturity thereof. Said annual tax shall be levied and collected by the same officers and in the same manner as is now provided for the levy and collection of taxes for county purposes in Greenville County. The money so collected shall be applied by or under the direction of the county treasurer to the payment of the principal and the interest as they respectively become due, and pending such application shall be deposited or invested by or under the direction of the sub-district committee and the county treasurer."

Section 7. "The proceeds of the sale of said bonds, as provided by this Act, shall be kept by the county treasurer as a separate fund and shall be paid out only upon orders or warrants of the sub-district committee and the county treasurer for the purposes specified in this Act."

Section 8. "That any income derived by the Committee in excess of such sums as may be necessary for the carrying out of the powers vested in it by Act 509, Acts of 1933 (38 Stat. 898), shall be applied by the Committee, first, to the payment of the future interest which may be due on said bonds, and, next, to the sinking fund for the retirement thereof so as to reduce the tax levied for such purpose."

Pursuant to authority contained in this Act, an election was ordered and duly held on July 15, 1941, in which 206 votes were cast in favor of the bonds, and 8 votes were cast against them, and on the same date respondent committee by resolution in proper form duly adopted, declared the election legal and valid and in favor of issuing the bonds.

By virtue of the foregoing authority conferred by law and the facts as narrated, the committee has passed a resolution preparatory to offering the bonds for sale; it intends to and will carry out said purpose unless prevented by order of Court, and will offer said bonds for sale to Greater Green-

ville Sewer District and the public generally, and when a sale is perfected the proceeds will be used primarily,

(1) To extend and enlarge water lines throughout the district by, (a) purchasing such private lines as may be suitable and which may be purchased at a reasonable price; (b) where necessary, building new lines.

(2) Installing fire hydrants, valves, and such other accessories as may be necessary to furnish adequate fire protection for the district.

(3) Purchase fire engines, fire hose, acquire and equip fire station and alarm systems, and such other accessories as may be necessary to furnish adequate fire protection for the district.

(4) Extend sewer lines.

It is further the intent and purpose of the respondent committee to purchase garbage trucks and other equipment necessary to collect and dispose of garbage in the district, and it is about to levy a tax to pay therefor.

It is contended by the petitioner that the legislature has undertaken to authorize Parker Water and Sewer Sub-District, as a special district, to issue bonds, and has provided for their payment an unlimited *ad valorem* tax, which is in contravention of Article X, Section 5 of the State Constitution. It is pointed out that under the Constitution a specially created tax district with limited powers cannot be clothed with power and authority by the legislature to issue bonds for fire protection and to levy a tax to finance the bonds, for the reason that such powers belong to a general municipal corporation. The constitutional provision invoked (Art. X, § 5), it is argued, restricts such a tax to "counties, townships, school districts, cities, towns and villages," and that such taxing powers can be delegated only to the general municipal corporations named.

In determining whether an Act of the legislature is forbidden by the State Constitution, it must be borne in mind that the Constitution is not a grant of power,

but a restriction upon an otherwise practically unlimited power. The Constitution is to be examined, not to ascertain whether a power has been conferred, but whether it has been taken away. The legislature is, practically, omnipotent in the matter of legislation, except insofar as it is restrained by the Constitution, either expressly or by necessary implication. The mere enactment of a law is a legislative declaration of the necessary constitutional power, which is entitled to great respect from a coordinate department of the government. And our decisions uniformly hold that every Act is presumed to be constitutional until the contrary is made plainly to appear, and that all doubts on the subject are to be resolved in favor of its validity. These principles and these presumptions are not of mere local application, but are common to practically all of the states. By way of illustration, it is necessary only to cite a few recent cases: *Thomas v. Macklen,* 186 S. C., 290, 195 S. E., 539; *Townsend v. Richland County,* 190 S. C., 270, 2 S. E. (2d), 777; *Clarke v. South Carolina Public Service Authority,* 177 S. C., 427, 181 S. E., 481.

We might add that the application of arbitrary rules of constitutional construction should be resorted to with caution, especially when it would bring about results contrary to the declared public policy of the State and would hamper the legislature in adequately providing for the health, morals, safety and well-being of the people. Only those things expressed in such positive affirmative terms as plainly imply the negative of what is not mentioned in view of the known policy of the State, should be considered as prohibiting the powers of the legislature.

We do not think that the contention of the petitioner as stated is reasonably tenable. The powers of every municipal corporation or *quasi* municipal corporation are necessarily more or less limited, and the scope and extent of their corporate powers and their limitations are always matters of legislative discretion. The number and scope of

the objects for which a public corporation is organized do not and have never been held to constitute the test by which to determine whether the organization is a municipal corporation, properly so called, or only a *quasi* municipal corporation.

The Parker Water and Sewer Sub-District, within the purview of its powers, is, it is true, a corporation or agency endowed with limited corporate functions, but they are derived from the same source and exercised in substantially the same way as any other municipal corporation. It is an arm of government created by the legislature for a specific public purpose, that is, fire protection and garbage disposal. And we find nothing in the Constitution which takes from the legislature the power to create a special district with limited powers. *Evans v. Beattie, infra.*

The Act is not an unconstitutional delegation of taxing power for another reason. The legislature itself has levied the tax, and the sub-district has no discretion thereabout, as will be seen from Section 6 of the Act, which reads in part: "Until the principal and interest of all bonds issued under this Act shall be fully paid, there shall be levied annually upon all taxable property in the sub-district a tax sufficient to pay such interest * * * and to provide a sinking fund * * *. Said annual tax shall be levied and collected by the same officers and in the same manner as is now provided for the levy and collection of taxes for county purposes in Greenville County."

This applicable principle is fully covered by the language of the Court in *Evans v. Beattie,* 137 S. C., 496, 135 S. E., 538, in construing the constitutionality of the Coastal Highway Act.

The petitioner contends that the tax provided for fire protection and garbage disposal cannot be sustained upon the ground that these public purposes are local improvements.

The admitted facts show that Parker Water and Sewer Sub-District embraces the area immediately adjoining and West of the City of Greenville. Within its bounds are located almost all of the textile mills and industries in Greenville County. And within this area live about 25,000 people. The population and property in a large part of the sub-district are as congested as. it is ordinarily in a city. This entire area is without any fire protection, and in times past has been visited by disastrous fires. It is admitted that the installation and maintenance of fire equipment and garbage service will be of special and peculiar benefit to the property and residents within the district; that this benefit will be far in excess of its cost, and will be in addition to, and different from any benefit resulting to the general public therefrom. The property in this area is assessed for taxation at $8,270,000.00.

In our opinion, the general tax may be regarded as an assessment to maintain fire protection and garbage service in Parker Water and Sewer Sub-District, which may be classed as a local improvement.

In 31 C. J., § 3, Page 264, "Local Improvement" is thus defined: "A term with a well defined meaning, which has been applied to an improvement made in a particular locality, by which the real property joining or near such locality is especially benefited; a public improvement, which, although it may incidentally benefit the public at large, is primarily for the accommodation and convenience of the inhabitants of a particular locality, conferring a special benefit upon real property contiguous to the locality of the improvement. * * * According to the context, the term may include bridges; an electric light system; grading, curving, and paving streets; sewers, street improvement; street sprinkling; the laying of a water main."

On principle, we see no substantial distinction between the benefits to be derived from the local improvements above listed and the benefits to be derived from fire protection and garbage disposal, as affecting property. It is a matter of

common observation and experience that property must necessarily be benefited and its value enhanced where fire protection is adequate and where garbage disposal is' provided for, thus adding to the safety and health of a community.

It is finally contended that the sale of the bonds to be issued by Parker Water and Sewer Sub-District to the parent organization, the Greater Greenville Sewer District, would be unlawful because the latter has no legal right to purchase the bonds under the laws which created it, with the amendments thereto.

We see no merit in this contention. If the legislature had the power, as it did, to create Greater Greenville Sewer District, and to confer upon it its original powers, we see no reason why those powers might not be restricted or enlarged by the legislature at any time. This was a matter purely within the discretion of the law-making body.

The judgment of this Court is that the petition be, and hereby is, dismissed.

MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGES L. D. LIDE and A. L. GASTON, ACTING ASSOCIATE JUSTICES, concur.