75 N.J. Super. 448 (1962)
183 A.2d 450
DENNIS J. VALVANO, PLAINTIFF-APPELLANT,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF UNION, COUNTY OF UNION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued June 11, 1962.
Decided July 11, 1962.
*449 Before Judges PRICE, SULLIVAN and LEWIS.
Mr. Marvin A. Sachs argued the cause for appellant (Mr. Harold D. Feuerstein, attorney; Mr. Sachs, of counsel).
Mr. John B. Stone, Jr., argued the cause for respondent (Messrs. Ryan, Saros, Davis & Stone, attorneys; Mr. Stone, of counsel; Mr. Bernard L. Davis, on the brief).
The opinion of the court was delivered by LEWIS, J.A.D.
Plaintiff sued the Board of Chosen Freeholders of the County of Union (hereafter board). The original complaint embraced a count in lieu of prerogative writ, a contract action against the board, and a tort claim against Richard T. Bueschel and his insurance agency for the unlawful interference with an advantageous contractual relationship. Bueschel filed a counterclaim. By formal stipulation the proceedings, insofar as they related to Bueschel and the counterclaim, were dismissed with prejudice. At the trial the prerogative writ aspect of the case was abandoned by plaintiff. The sole remaining issue, tried by the Superior Court, Law Division, without a jury, was plaintiff's action against the board for breach of a written contract and the recovery of consequent damages alleged *450 to be in excess of $70,000. The trial court entered judgment in favor of defendant. Plaintiff appeals.
The essential facts can be briefly narrated. Customarily, the board annually named without a written agreement an insurance advisor and consultant. On February 5, 1960, according to such practice, plaintiff was so designated for the year 1960. As a result of the general election in November of that year, the political affiliation of the majority of the board's members (commencing January 2, 1961) changed from one party to another. On December 28, 1960 the then board entered into a written contract with plaintiff (pursuant to a resolution adopted on December 22, 1960) which provided, inter alia, that the terms thereof should remain in full force and effect for a period of three years from its date; that the plaintiff was to act as sole and exclusive broker for the county "for the purposes of procuring any and all insurance that may be necessary to protect the interests of the COUNTY OF UNION and to supervise all such insurance and COUNTY indemnity bonds," and that the broker was to hold himself available for consultation and conferences with the entire board or any of its appointed committees relating to insurance matters. On January 2, 1961 the reconstituted board, by resolution, rescinded the agreement of December 28, 1960 with plaintiff, declaring it to be invalid. Subsequently, Richard T. Bueschel was retained by the new board as its insurance advisor and consultant. Plaintiff's suit followed.
The trial court found that the contract of December 28, 1960 related to a governmental and not a proprietary function and that it evidenced in substance an attempt to prevent or impair the exercise of the discretionary powers of the succeeding board. The court determined that such an agreement was not binding upon the new board that assumed office January 2, 1961. The supporting authorities relied upon for that adjudication included 10 McQuillin, Municipal Corporations (3d ed. 1950), sec. 29.101, pp. 408-9, stating the broad proposition:
*451 "Respecting the binding effect of contracts extending beyond the terms of officers acting for the municipality, there exists a clear distinction in the judicial decisions between governmental and business or proprietary powers. With respect to the former, their exercise is so limited that no action taken by the governmental body is binding upon its successors, whereas the latter is not subject to such limitation, and may be exercised in a way that will be binding upon the municipality after the board exercising the power shall have ceased to exist."
and an opinion of the Attorney General of New Jersey, F.O. 1956, No. 18, citing, inter alia, McQuillin, supra; Allas v. Borough of Rumson, 115 N.J.L. 593, 594 (E. & A. 1935), and Skladzien v. Board of Education of City of Bayonne, 12 N.J. Misc. 602, 173 A. 600 (Sup. Ct. 1934), affirmed o.b. 115 N.J.L. 203 (E. & A. 1935); also the case of State v. Layton, 28 N.J.L. 244 (Sup. Ct. 1860), affirmed 28 N.J.L. 575 (E. & A. 1860), wherein a five-year contract with the County of Hudson respecting management of a jail and workhouse was held to be void as being an infringement upon the governmental functions of the county; and certain sister-state decisions to the same effect, viz: Miles v. City of Baker, 152 Or. 87, 51 P.2d 1047 (Sup. Ct. 1935) (accountant  fiscal year, exceeding term of appointing authority); Parent v. Woonsocket Housing Authority, 87 R.I. 444, 143 A.2d 146 (Sup. Ct. 1958) (attorney for legal services  five-year agreement); and McCormick v. Hanover Township, 246 Pa. 169, 92 A. 195 (Sup. Ct. 1914) (attorney for legal services  fiscal year, exceeding term of appointing authority).
While the common law governmental-proprietary dichotomy is a salutary guide leading to the correct conclusion in the instant case, we should note that it is not an inexorable rule for rigorous adherence. It is a legal principle universally recognized, but not uniformly applied. For a discussion and collection of authorities, pro and con, on the subject of the right of a municipal body to bind its successors in office, see 37 Am. Jur., Municipal Corporations, sec. 66, p. 679; 63 C.J.S. Municipal Corporations § 987, *452 p. 549; Annotations, 70 A.L.R. 794 and 149 A.L.R. 336. The distinction between governmental and proprietary functions is not easy to decipher. "Municipal Liability in Proprietary and Governmental Functions," 7 J. Pub. L. 503 (1958). Cf. Cloyes v. Delaware Tp., 41 N.J. Super. 27, 36 (App. Div. 1956), affirmed 23 N.J. 324, 327-32 (1957); Stringfield v. City of Hackensack, 68 N.J. Super. 38, 43, 44 (App. Div. 1961), certif. denied 36 N.J. 133 (1961). As the scope of "governmentality" expands, the intertwining and overlapping of such functions make it increasingly more difficult to draw any definitive line of separation.
We do not agree with plaintiff's argument that "there is nothing governmental about the services performed by the broker." Boards of chosen freeholders not only have the power to insure the property of the county (R.S. 40:26-1), but in some instances insurance coverage against liability is, in effect, mandatory (N.J.S.A. 40:26-2). There is an imperative duty upon the county officials to be mindful of the insurance needs of the county and to act accordingly. Implicit in the agreement of December 28, 1960 is the recognition of such a governmental responsibility, since the terms thereof specifically required the broker to attend meetings, supervise an insurance program and render advice "on all matters pertaining to insurance affairs." The exercise of diligent and sound discretion by the board members is required. The insurance broker is their professional consultant, in whom utmost confidence is reposed; he is a subordinate appointee without statutory term acting under their supervisory control. Moreover, it was conceded by plaintiff that the board has the power to remove such an employee under the provisions of R.S. 40:21-4, which reads:
"The board of chosen freeholders may, by a majority vote of all its members, remove from office any person holding office in subordination to or by appointment from such board where the term of office is not fixed by law." *453 Note, LaPolla v. Board of Chosen Freeholders of County of Union, 71 N.J. Super. 264 (Law Div. 1961).
In his brief plaintiff submits that the test upon which this contract should be examined is set forth in Beverly Sewerage Authority v. Delanco Sewerage Authority, 65 N.J. Super. 86, 95 (Law Div. 1961), affirmed per curiam 70 N.J. Super. 575 (App. Div. 1961), quoting: "The duration of a contract let by a municipality must, in the absence of statute, be reasonable, having regard to the circumstances." That case involved an action by a municipal sewerage authority to reform or rescind a 40-year sewerage disposal contract entered into with another sewerage authority. The parties contracted pursuant to statutory authority and the court found, under the circumstances there presented, the terms and conditions agreed upon were not unreasonable nor against public policy. There is no realistic similarity between the facts in that litigation and those presently under consideration.
The gravamen of plaintiff's contention is that the board is a continuously existing municipal corporation and, as such, could bind by legal contract its successors in office if the provisions of the contract at the time of its execution were fair, just and reasonable, and were advantageous to the board. There are judicial statements broadly supporting in principle such an argument. In particular see Denio v. Huntington Beach, 22 Cal.2d 580, 140 P.2d 392, 149 A.L.R. 320 (Sup. Ct. 1943), a case which dealt with professional services incident to a dispute concerning oil and gas rights and moneys to be received by the city for ten ensuing years. We have examined the several decisions in foreign jurisdictions cited to us by plaintiff and have found that the factual premise in each case was notably distinguishable from the facts at bar.
Plaintiff maintains that confusion and additional costs to the county ensue upon the transition of administrations and the appointment of a new insurance broker, who, in pursuit of commissions, proceeds upon a course of policy *454 cancellation. Thus, it is argued that such an "evil" was averted, or at least minimized, by the extension for three additional years of plaintiff's appointed term. There is testimony, however, on behalf of the defendant board that, even if insurance policy cancellations do follow a change in municipal brokerage representation, there would be no loss of money to the county if the policies were rewritten with the same insurance company. In any event, we must not be oblivious to the realities of the situation and to the totality of the circumstances and their obvious import. The agreement involved prospective brokerage commissions in excess of $70,000; there was no evident emergency for an eleventh-hour employment contract on the eve of a new administration; and the effect of the agreement was to solidify in office a subordinate appointee of the old board for three years beyond his current term and thus deprive the incoming governing body of its proper right to obtain independent professional consultation and advice of its own choosing. Public policy demands the utmost good faith and that municipal officials be not shorn of the discretionary powers of their office by any final action of their predecessors on their way out of office.
Whether we adopt the governmental function theory advanced by the board and relief upon by the trial court or apply the test urged by the plaintiff, the same result is reached. The contract of December 28, 1960 delimited and circumscribed the efficiency of the successor board with respect to its discretionary powers concerning the insurance affairs of the county, which powers should have been transmitted unimpaired to the newly-constituted board. The facts revealed by the record do not sustain the purity of motivation, good faith and quid pro quo which are essential to the validity of a municipal contract.
The judgment of the trial court dismissing plaintiff's complaint, with prejudice, is affirmed.