2366

PIEDMONT PUBLIC SERVICE DISTRICT,
Respondent v. Douglas W. COWART, Appellant.
(459 S.E. (2d) 876)

Court of Appeals

*Deborah R.J. Shupe,* of *Berry, Adams, Quakenbush & Dunbar;* and *Herbert W. Louthian, Jr.,* of *Louthian & Louthian;* Columbia, *for appellant.*

*Michael A. Farry,* of *Horton, Drawdy, Ward & Johnson,* Greenville, *for respondent.*

Heard Apr. 4, 1995.

Decided June 19, 1995; Reh. Den. Aug. 8, 1995.

HOWELL, Chief Judge:

The Piedmont Public Service District (the District) brought this action against Douglas W. Cowart seeking a judgment of $30,000.00 and a declaration that Cowart's employment contract with the District was void as a matter of public policy. Cowart counterclaimed, seeking to enforce the contract and collect $11,100.48 due under the contract. The trial court granted the District's motion for summary judgment, and dismissed Cowart's counterclaim. Cowart appeals. We affirm.

The Piedmont Public Service District, a special purpose district covering portions of Greenville and Anderson counties, was created by the legislature in 1955. Act No. 389, 1955 S.C. Acts. 776. In 1974, the District employed Cowart as the fire chief. Cowart later was named administrator of the District. On November 1, 1984, the District and Cowart entered into an employment contract for a period of twenty years. The contract contained a termination clause which required the District to pay Cowart two years salary upon the termination of employment, even "in the event of any violation by employee." On November 4, 1985, the contract was modified to increase the severance pay period to five years, regardless of the reason for termination.

On November 12, 1992, at a regular meeting of the commissioners of the District, the commissioners announced they would go into executive session to discuss a "personnel matter." During the executive session, the commissioners voted four to one to terminate Cowart's employment without cause and to honor his employment contract. The commissioners and Cowart then signed a separate contract encompassing the severance provisions of the employment contract. The separate contract provided that Cowart would receive $37,781.40 annually for a period of five years, as required under the employment contract. The District paid Cowart $30,000.00 immediately, and agreed to pay the additional $7,781.40 on January 5, 1993. The commissioners adjourned the executive session, and announced the results of the vote to the public. Each commissioner was then publicly polled as to his understanding of the vote.

On December 4, 1992, the commissioners sent Cowart a letter advising him that the November 12 vote violated the Freedom of Information Act and, therefore, was invalid. They directed Cowart to return the $30,000.00, along with all other

funds and benefits he had received. Cowart refused, and the District, at its meeting on January 5, 1993, voted to terminate Cowart for insubordination. This suit followed.

Pursuant to the District's motion for summary judgment, the trial court ruled the District's November 12 vote violated S.C. Code Ann. § 30-4-70 (1991), more commonly known as the Freedom of Information Act. The court therefore ruled the vote was without effect. In addition, the trial court found the District's termination of Cowart on January 5, 1993, was proper, and Cowart's failure to return the $30,000.00 constituted insubordination. The trial court also found the twenty-year employment contract with Cowart to be against public policy and void as a matter of law. The court dismissed all of Cowart's counterclaims.

## I.

The Freedom of Information Act (the Act) dictates the procedures by which public bodies must conduct their meetings. S.C. Code Ann. § 30-4-70(a)(6) (1991) states:

Prior to going into executive session the public agency shall vote in public on the question and when such vote is favorable the presiding officer shall announce the specific purpose of the executive session. No formal action may be taken in executive session. As used in this item "formal action" means a recorded vote committing the body concerned to a specific course of action. *No vote may be taken in executive session.* (Emphasis added.)

There is no dispute the District's vote to terminate Cowart took place while the District was in executive session. Because the vote was taken in violation of the requirements of the Act, the trial court held the vote was ineffective.

Cowart argues the trial court employed a hyper-technical reading of the Act. We disagree. If a statute's language is plain and unambiguous and conveys a clear and definite meaning, there is no occasion for employing rules of statutory interpretation. The court has no right to look for or impose another meaning. *Miller v. Doe*, 312 S.C. 444, 441 S.E. (2d) 319 (1994). The District clearly violated the plain language of the Act by voting while in executive session.

Cowart also contends the subsequent public ratification and polling of the commissioners satisfied the spirit of the Act,

thus the vote was valid. However, an examination of the history of the Act refutes this argument. The Act originally allowed formal action to be taken in executive session if the action was later ratified in public. S.C. Code Ann. § 30-4-70(a)(5) (Supp. 1978) ("Any formal action taken in executive session shall thereafter be ratified in public session prior to such action becoming effective."). However, the 1987 amendments to the Act deleted the language allowing ratification of votes taken in executive session and specifically prohibited voting while in executive session. S.C. Code Ann. § 30-4-70(a)(6) (Supp. 1987). While a mere technical error may not constitute a violation of the Act, *see Multimedia, Inc. v. Greenville Airport Comm'n*, 287 S.C. 521, 522, 339 S.E. (2d) 884, 887 (Ct. App. 1986) ("[S]ubstantial compliance with the Act will satisfy its requirements where a technical violation has no demonstrated effect on a complaining party"), given the history of the Act, we cannot characterize the District's error as merely technical. By affirmatively deleting the ratification language, the legislature made its intent clear. Ratification no longer validates a vote cast during an executive session.

Moreover, the purpose of the Act "is to protect the public from secret government activity." *Bellamy v. Brown*, 305 S.C. 291, 295, 408 S.E. (2d) 219, 221 (1991). The elimination of the ratification provision furthers this purpose. Subjecting the vote itself to the bright light of public scrutiny helps ensure that the issue is fully debated and more carefully considered, while the ratification procedure keeps the debate behind closed doors. We recognize, of course, that a public body may hold a meeting closed to the public to discuss employment, compensation, or termination of an employee. S.C. Code Ann. § 30-4-70(a)(1). Moreover, there is no requirement that the details of matters properly discussed in a closed meeting be revealed to the public. *See Cooper v. Bales*, 268 S.C. 270, 233 S.E. (2d) 306 (1977). Nonetheless, requiring votes to be taken in public heightens the public awareness and understanding of the issue, and forces each member of the body to take responsibility for his vote. In fact, the case at bar provides an excellent example of the problem the Act seeks to avoid. The District apparently met in executive session for over an hour to discuss Cowart and the details of his termination. After the vote, however, the District told the public only that the commissioners

> voted to dismiss and terminate Douglas Cowart without cause, and [that] he be relieved of his duties immediately. Furthermore, on this day, the same commissioners voted to honor the contract entered into between Doug Cowart and the Piedmont Public Service District on November 1st, 1984 in its entirety. The vote to terminate Doug Cowart without cause carried four to one. Commissioner Ropier, is that the way you understand it?
>
> [Response] That's the way I understand it.
>
> Commissioner Dickson, is that the way you understand it? Commissioner McAbee, is that the way you understand it? Furthermore, to honor the contract of Doug Cowart entered into on November 1st, 1984 in its entirety, do you understand it that way?
>
> [Response] Right.
>
> Do you understand it? Everybody agree on that?

The District did not inform the public of the terms of the 1984 contract and that Cowart was to receive over $180,000 after being terminated. While the public knew the vote was four to one, the public did not know which commissioner voted against the termination. Clearly, the procedure used by the District satisfied neither the letter nor the spirit of the Act.

Upon finding a violation of the Act, the trial court may order equitable relief as it considers appropriate, and a violation of the statute must be considered to be an irreparable injury for which no adequate remedy at law exists. S.C. Code Ann. § 30-4-100(a). The vote to terminate Cowart was taken in violation of the Act. We find no abuse of discretion on the part of the trial court in ordering the equitable relief of invalidation of the vote. *See Business License Opposition Comm. v. Sumter County*, 311 S.C. 24, 426 S.E. (2d) 745 (1992) (affirming master's decision to invalidate ordinance adopted by county council in violation of the Freedom of Information Act).[1]

---

[1] Cowart also contends the District effectively terminated Cowart on November 12, 1992, and thus had no authority to take further action with regard to Cowart's employment until there was a *judicial* determination of the propriety of the District's actions on November 12. We disagree. To hold that a public body cannot correct errors in its proceedings absent a judicial review of the proceedings would unnecessarily impede the decision-making powers of the body, and would allow actions improperly taken to stand while the case winds its way through the judicial system.

## II.

Cowart argues the trial court erred when it found, as a matter of law, Cowart's twenty-year employment contract void as a matter of public policy. We disagree.

A municipal corporation[2] is a creature of statute and has only the powers expressly granted it, those which are necessarily or fairly implied in or incident to the express powers, or those powers essential to the accomplishment of its purpose. *Creech v. South Carolina Pub. Serv. Auth.*, 200 S.C. 127, 20 S.E. (2d) 645 (1942). Thus, while a municipal corporation has the power to enter into contract, this power is not unlimited. *City of North Charleston v. North Charleston Dist.*, 289 S.C. 438, 346 S.E. (2d) 712 (1986) (neither a municipal corporation nor a special purpose district can bind itself by any contract beyond the scope of its powers). "A municipal contract may be made for, but only for, such a term as is within the limitation imposed by statute or charter or, if no limitation is imposed, for a reasonable time." 63 C.J.S. *Municipal Corporations* § 979(b) (1950). Here, the statutes establishing the District generally authorize the District to enter into contracts, but do not limit the duration of the contracts.[3]

---

[2] Public service or special purpose districts are not necessarily equivalent to municipalities or municipal corporations for all purposes. *See, e.g., Tovey v. City of Charleston*, 237 S.C. 475, 117 S.E. (2d) 872 (1961) (special purpose district is not a municipality within the meaning of statutes governing annexation by municipalities). While the District may properly be described as a quasi-municipal corporation, *see Boyce v. Lancaster County Natural Gas Auth.*, 266 S.C. 398, 223 S.E. (2d) 769 (1976), *overruled in part on other grounds, McCall v. Batson*, 285 S.C. 243, 329 S.E. (2d) 741 (1985), for the purpose of determining the scope of the District's power to enter into contracts, the law governing municipal corporations is applicable. *See Floyd v. Parker Water & Sewer Sub-Dist.*, 203 S.C. 276, 17 S.E. (2d) 223 (1941) (water and sewer sub-district is a corporation or agency endowed with limited corporate functions derived from the same source and exercised in substantially the same way as any other municipal corporation); *see also Parent v. Woonsocket Hous. Auth.*, 87 R.I. 444, 143 A. (2d) 146 (1958) (housing authority functions in area which is public and governmental in character; therefore, rules governing municipal corporation's power to enter into contracts applicable to housing authority).

[3] The District is specifically authorized "to appoint officers, agents, employees and servants, to prescribe the duties of such, [and] to fix their compensation," Act No. 389 § 3(17), 1955 Acts 776, and [t]o make contracts for construction, engineering and other services, with or without competitive bidding." *Id.* § 3(18). In addition, the District is authorized to "[s]elect and employ a fire chief or equivalent official to supervise the fire department and have complete supervision over the use and operation of the fire-fighting equipment of the district." Act No. 1839 § 4(h), 1972 Acts 3655.

The question then becomes whether the District's twenty-year employment contract with Cowart is reasonable.

If the term of the contract in question extends beyond the term of the governing members of the municipality entering into the contract, the validity of the contract is dependent on the subject matter of the contract. The general rule is that, if the contract involves the exercise of the municipal corporation's business or proprietary powers, the contract may extend beyond the term of the contracting body and is binding on successor bodies if, at the time the contract was entered into, it was fair and reasonable and necessary or advantageous to the municipality. However, if the contract involves the legislative functions or governmental powers of the municipal corporation, the contract is not binding on successor boards or councils. *See* 63 C.J.S. *Municipal Corporations* § 987; 56 Am. Jur. (2d) *Municipal Corporations, Counties & Other Political Subdivisions* § 154 (1971); 10 Eugene McQuillin, *The Law of Municipal Corporations* § 29.101 (3d ed.) (Rev. 1990). This rule was adopted by our Supreme Court in *Newman v. McCullough*, 212 S.C. 17, 46 S.E. (2d) 252 (1948):

> With respect to the power of a municipal council to enter, in behalf of the municipality, into a contract which will extend beyond the term for which the members of the council were elected, a distinction is drawn based upon the subject matter of the contract—whether legislative or governmental, or whether business or proprietary. Thus, where the contract involved relates to governmental or legislative functions of the council, or involves a matter of discretion to be exercised by the council unless the statute conferring power to contract clearly authorizes the council to make a contract extending beyond its own term, no power of the council to do so exists, since the power conferred upon municipal councils to exercise legislative or governmental functions is conferred to be exercised as often as may be found needful or politic, and the council presently holding such powers is vested with no discretion to circumscribe or limit or diminish their efficiency, but must transit them unimpaired to their successors.

*Id.* at 23, 46 S.E. (2d) at 255. Unfortunately, the difference between proprietary and governmental functions is often diffi-

cult to determine, because, "[a]s the scope of 'governmentality' expands, the intertwining and overlapping of such functions make it increasingly more difficult to draw any definitive line of separation." *Valvano v. Board of Chosen Freeholders*, 75 N.J. Super. 448, 183 A. (2d) 450 (App. Div. 1962). However, it is clear the rule is intended to protect the public by insuring that each governing body has available to it the powers necessary to effectively carry out its duties. Thus, when determining whether a contract is binding on successor boards, it appears that "[t]he true test is whether the contract itself deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired." *Plant Food Co. v. City of Charlotte*, 214 N.C. 518, 199 S.E. 712 (1938).

Applying the rule to the case at bar, there is no doubt that the contract between Cowart and the District involves the governmental or legislative powers of the District.

> As a general rule, the appointment and removal of public officers is a governmental function, and a municipal council cannot engage a public officer by contract for a term extending beyond that of its own members, so as to impair the right of their successors to remove such officer and to appoint another in his place.

*Newman*, 212 S.C. at 23, 46 S.E. (2d) at 255. The District's discretion to employ the Administrator of the District and set the terms of his employment is discretionary power which public policy demands remain unimpaired. The twenty-year employment contract requiring five years severance pay even if Cowart breaches the contract is an enormous impairment of the District's power and authority and therefore cannot be binding on successor boards.[4] *See City of Hazel Park v. Potter*, 169 Mich. App. 714, 426 N.W. (2d) 789 (1988) (contract of employment between outgoing city council and city manager that included generous severance pay provisions held void because it deprived the incoming council of power to select and ap-

---

[4] While the employment agreement between Cowart and the District allows the District to terminate Cowart for any reason, the five-year notice and severance provisions foreclose any argument that the agreement in fact does not tie the hands of the District.

point city manager); *Falls Township v. Scally,* 115 Pa. Cmwlth 56, 539 A. (2d) 912 (1988) (environmental control officer performed governmental duties; thus, three-year employment contract entered into by outgoing board and officer not binding on successor board); *Harrison Cent. Sch. Dist. v. Nyquist,* 59 A.D. (2d) 434, 400 N.Y.S. (2d) 218 (1977), *appeal denied,* 44 N.Y. (2d) 645, 406 N.Y.S. (2d) 1026, 378 N.E. (2d) 126 (1978) (three-year contract of employment between school district and attorney void because it binds successor boards); *Valvano,* 183 A. (2d) 450 (contract engaging broker to act as insurance advisor limited the County's discretionary powers and therefore was not binding on successor board); *City of Riviera Beach v. Witt,* 286 So. (2d) 574 (Fla. Dist. Ct. App. 1973), *cert. denied,* 295 So. (2d) 305 (Fla. 1974) (city prosecutor's two-year employment contract involved governmental function and therefore was void because it extended beyond the terms of the contracting officers); 56 Am. Jur. (2d) *Municipal Corporations, Counties & Other Political Subdivisions* § 154 (the appointment and removal of public officers generally is a governmental function, and a municipal council cannot engage a public officer by contract for a term tending beyond that of its own members).

Cowart, however, contends that because the District, by statute, is a public corporation of perpetual succession, the District's actions survive and are binding on future commissions, even though the members of the commission change frequently. *See, e.g.,* 10 McQuillin § 29.101 ("Where a municipal body is a board or commission, the terms of the members of which are staggered, it is a continuous body, existing in perpetuity; and contracts of such a body cannot be deemed to bind or restrict successors in office."); *City of Phoenix v. Long,* 158 Ariz. 59, 761 P. (2d) 133 (Ct. App. 1988) (contract extending beyond the term of office of the members of a public board, if made in good faith, is ordinarily valid, because the body is a continuously existing corporation); *Daly v. Stokell,* 63 So. (2d) 644 (Fla. 1953) (when terms of commissioners are staggered, the commission is a continuing body and may contract for any reasonable time). However, we do not believe this exception validates the contract at issue here.

Preliminary, we question whether our Supreme Court would recognize the exception. The rule that municipal corpo-

rations cannot bind successors to contracts involving governmental matters is very clearly and powerfully stated by the court in *Newman*. While the city council in *Newman* apparently did not have staggered terms, nothing in the opinion suggests that there may be an exception to the rule stated in the opinion. Moreover, the exception apparently is not widely recognized, because there are cases involving contracts entered into by boards or council with staggered terms where the courts nonetheless void the contracts on the grounds that they extend beyond the term of the contracting members of the terms. *See, e.g., Rogers v. City of South Charleston*, 163 W.Va. 285, 256 S.E. (2d) 557 (1979); *Parent v. Woonsocket Hous. Auth.*, 87 R.I. 444, 143 A. (2d) 146 (1958).

Most importantly, however, we believe the public policy concerns underlying the rule that a municipal corporation cannot bind successor boards are equally applicable in cases where the members of the board have staggered terms. As discussed above, the rule is intended to ensure that governing bodies are free to discharge their governmental duties in the manner they deem appropriate and beneficial to the public they serve. This concern is present with all municipal bodies, whether or not the board or commission technically is a continuing body because the terms of its members are staggered or because the board has perpetual succession. Accordingly, the fact that the District has perpetual existence does not save Cowart's contract.

However, even if the exception for contracts entered into by boards with continuing existence were applicable, municipal contacts must, at the time of their execution, be fair and of a reasonable duration. *See Morrison Homes Corp. v. City of Pleasanton*, 58 Cal. App. (3d) 724, 130 Cal. Rptr. 196 (1976) (contract that was fair and reasonable when entered into was binding on successor boards); *Daly v. Stokell*, 63 So. (2d) 644 (Fla. 1953) (when terms of commissioners are staggered, the commission is a continuing body and may contract for any reasonable time); 63 C.J.S. *Municipal Corporations* §§ 979(b), 987 (municipal contract must be of reasonable duration; contract that is fair, reasonable and advantageous to the municipality is valid even if it extends beyond the term of office of the members of the contracting governing body). The contract between Cowart and the District

was for a period of twenty years.[5] While a twenty-year duration may well be reasonable for some contracts, it is not a reasonable duration for an employment contract for the administrator of a public service district, a position of utmost importance to the public, and one that requires the trust and cooperation of the commissioners.

We therefore agree with the trial court that, as a matter of law, Cowart's twenty-year employment contract is void as a violation of public policy.[6] Accordingly, for the foregoing reasons, the decision of the trial court is hereby

Affirmed.

CONNOR, J., concurs.

GOOLSBY, J., concurs in a separate opinion.

GOOLSBY, Judge (concurring):

I agree with the majority that the trial court did not err in holding Douglas Cowart's twenty-year employment contract void as a matter of public policy. I would base this decision, however, on the fact that the contract was not of a reasonable duration. *See* 63 C.J.S. *Municipal Corporations* § 979(b) (1950) (unless the term of a municipal contract is restricted by statute or other mandate, the term of the contract is limited to a reasonable duration). I would therefore not reach the issue of whether a council of a municipal corporation that is in perpetual succession has the authority to contractually bind its successors.

---

[5] We reject Cowart's argument that, because the contract allows termination after five years notice, the duration of the contract is five years rather than twenty years.

[6] To the extent the agreement executed by the District and Cowart at the meeting on November 12 simply reflected the terms of the employment contract as modified, the agreement is void because the underlying contract is void. However, even if the agreement could be considered a contract separate from the employment contract, it nonetheless is void. The agreement was voted upon and entered into while the District was in executive session. Thus, like the vote to terminate Cowart, the vote to enter into the contract was taken in violation of the Freedom of Information Act, and was invalidated by the trial court.