Kurt STEPHENSON, Respondent,

v.

**VILLAGE OF CLAYCOMO,
Missouri, Appellant.**

**No. WD 67533.**

Missouri Court of Appeals,
Western District.

Dec. 11, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 29, 2008.

Application for Transfer Denied
March 18, 2008.

Michelle R. Stewart, Daniel Cory Estes, Overland Park, KS, for Appellant.

R. Brian Hall, Kansas City, MO, for Respondent.

Before RONALD R. HOLLIGER, P.J., HAROLD L. LOWENSTEIN, and JAMES M. SMART, JR., JJ.

JAMES M. SMART, JR., Judge.

The Village of Claycomo, Missouri, appeals the trial court's grant of summary judgment in favor of its former employee, Kurt Stephenson. Stephenson alleged that the Village breached its employment contract with him by failing to comply with the terms of the severance pay provision. The judgment is affirmed.

**Factual and Procedural Background**

Kurt Stephenson began working for the Village of Claycomo in July 1988. When he was promoted to Fire Chief in October 2002, he and the Village entered into a written employment agreement. That contract provided, in part, for three years of severance pay in the event that he was terminated without cause, as defined in the contract.

On March 11, 2003, Mr. Stephenson entered into a second employment agreement with the Village. The second agreement was very much the same as the first, except that it provided for five years of severance pay in the event of termination without cause. The severance provision, Paragraph 8.1, stated, in relevant part:

> If the Chief's termination is determined to be inappropriate or not for cause as defined herein, the Chief shall be immediately entitled to a[ ] one time payment in the amount equal to five (5) years of his annual gross salary, all benefits [listed] above and any other existing benefits received as allowed by law or he shall have the option of being reinstated to his position.

The circumstances under which Mr. Stephenson could be terminated "for cause" again were spelled out in the contract and remained the same as in the prior contract. They included such things as mental or physical unfitness, drunkenness or use of controlled substances, conviction of a felony, or more than three consecutive unsatisfactory performance evaluations. The agreement expressly provided that it could not be changed or amended without the mutual consent of the parties.

At a November 24, 2003 meeting, the Village Board of Trustees discussed the propriety and reasonableness of the five-year severance provision in Mr. Stephenson's contract. Sometime in late 2003, the Village's attorney began corresponding with Mr. Stephenson, seeking to alter the terms of the March 11 employment agreement. One of the points of contention was

the Village's desire to reduce the five-year severance provision to one year. The parties did not reach an agreement.

On March 8, 2004, the Board of Trustees met and adopted "Resolution 72." It stated that the validity of the March 11, 2003 employment agreement with Mr. Stephenson "has been questioned" and that the "Board of Trustees believes that it is in the best interest of the Village to have a valid employment agreement with key personnel." Resolution 72 resolved that:

1. The Employment Agreement [with Mr. Stephenson] dated the 11th day of March, 2003, *is hereby declared void and for naught.* [Emphasis added.]

2. Kurt Stephenson is hereby tendered an Employment Agreement in the form of and under the terms and conditions set forth in the attached Employment Agreement.

3. That if accepted, the attached Employment Agreement will be effective January 1, 2004.

4. That if not accepted by Kurt Stephenson within thirty (30) days of the date of this resolution, then the Employment Agreement attached shall constitute the terms of Kurt Stephenson's continuing employment with the Village until further changed by action of the Board of Trustees.

Mr. Stephenson, who was present at the meeting, was presented with Resolution 72 and a copy of the new employment agreement at that time. The new agreement contained a severance clause providing for one year's salary upon termination without cause. It also included other changes, most notably, modifications to the conditions under which Mr. Stephenson could be terminated "for cause" and a provision for automatically renewing one-year terms.

The next day, Mr. Stephenson sent a letter to the Board of Trustees. He stated that by passing Resolution 72, the Village had terminated the March 11, 2003 contract and, thus, his employment with the Village. Because he had been terminated without cause under the terms of the contract, he was demanding that the Village pay him his severance pay in accordance with Paragraph 8.1 of the contract. He stated that he did not wish to be "rehired" under the terms of the new employment agreement, nor did he wish to be "reinstated."

The Village's attorney responded the next day with a letter of his own, informing Mr. Stephenson that the Village had no intention of terminating his employment, that they considered him still to be employed by the Village, although under the terms of the new agreement, and that they would consider his failure to return to work a resignation.

On May 27, 2004, Mr. Stephenson filed a lawsuit against the Village alleging that the Village had breached its contract of employment with him. He alleged that the Village had failed to comply with the contract's severance-pay provision after terminating him without cause. The parties submitted a stipulation of facts to the court, along with supporting documentation, and both parties filed motions for summary judgment. The court heard argument on the motions.

On December 14, 2005, the court entered judgment in favor of Mr. Stephenson. The court found, among other things, that Mr. Stephenson's employment with the Village was terminated by the Board's passage of Resolution 72, which declared the March 11 employment contract "void and for naught." The court also found that Mr. Stephenson's employment was not terminated for cause, as defined in Paragraph 8 of the agreement. The court held that Paragraph 8.1 of the agreement is a "negotiated severance clause" and that

Mr. Stephenson was entitled to be paid the severance amount as set forth in that paragraph. At a subsequent hearing, the parties presented evidence as to damages. On September 20, 2006, the court entered judgment, awarding five years of salary and benefits to Mr. Stephenson in the amount of $331,687.25.

The Village appeals.

## Point I

The Village argues in Point I that the trial court erred in ruling that Mr. Stephenson's employment was terminated by passage of Resolution 72 because "no act of Defendant severed the employer-employee relationship." The Village cites no legal basis in its point relied on for this claim of error.

### *Standard of Review*

Appellate review of a summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). This court's criteria for ascertaining the propriety of summary judgment are the same as those that the trial court uses in determining whether to grant the motion. *Id.* Summary judgment is appropriate where the moving party establishes that no genuine issue of material fact exists and the party has a right to judgment as a matter of law. *Id.* at 378. Because the trial court's judgment is founded on the record submitted and the law, we need not defer to the trial court's order granting summary judgment. *Id.* at 376. On appeal of a summary judgment, we review the record in the light most favorable to the party against whom judgment was entered. *Id.*

### *Analysis*

█ The stipulation of facts and supporting documentation show that on March 11, 2003, Mr. Stephenson and the Village "entered into a bilateral employment contract employing [Mr. Stephenson] as Fire Chief" for the Village.[1] When Mr. Stephenson failed to agree to a new employment contract, the Village passed Resolution 72. That resolution proclaimed, among other things, that the March 11, 2003 employment agreement "is hereby declared void and for naught," and it alleged no fault on the part of Mr. Stephenson.

1. The stipulation of facts stated:
 1. On October 21, 2002, [Mr. Stephenson] and [the Village] entered into a bilateral employment contract employing [Mr. Stephenson] as Fire Chief of ... Village of Claycomo, an exact copy of which ... is attached....
 2. On March 11, 2003, [Mr. Stephenson] and [the Village] entered into a second bilateral employment contract employing [Mr. Stephenson] as Fire Chief of ... Village of Claycomo, an exact copy of which is attached....
 3. On March 8, 2004, [the Village's] Board of Trustees properly passed Resolution 72, with an attached proposed employment agreement, an exact copy of all of which is attached....
 4. [Mr. Stephenson] received written letters and other correspondence from [the Village's] attorney ... concerning the terms and conditions of the proposed employment contract, a copy of those letters ... and an e-mail correspondence ... are attached....
 5. An exact copy of the written minutes of [the Village]'s Board of Trustees meeting of March 8, 2004, is attached....
 6. An exact copy of the written minutes of [the Village]'s Board of Trustees meeting on November 24, 2003, is attached....
 7. [Mr. Stephenson] is a resident of Clay County, Missouri....
 8. [The Village] is a village of the State of Missouri, located in Clay County....
 9. The March 11, 2003 employment contract, the subject of this litigation, was entered into in Clay County....
 10. That [the Village] received [Mr. Stephenson]'s March 9, 2004, demand letter, an exact copy of which is attached....

In conjunction with the resolution, Mr. Stephenson was tendered an employment agreement containing the terms and conditions that he had previously rejected. The resolution stated that if Mr. Stephenson accepted the attached employment agreement, it would be retroactively effective to January 1, 2004, and that if not accepted by Mr. Stephenson within thirty days of the date of the Resolution, which was March 8, 2004, the new agreement would be effective as of that date and would constitute the terms of his continuing employment with the Village until further changed by the Board of Trustees.

 The Board thus purported to require Mr. Stephenson either to voluntarily and explicitly accept the new terms or to have them imposed on him involuntarily. It is elementary, of course, that one party to a valid bilateral contract may not unilaterally alter its terms. 17A AM.JUR.2D *Contracts* § 507 (2004). As with the initial creation of a contract, modification of a contract requires the mutual assent of the parties. *Id.* Here, there was no assent to a modification by Mr. Stephenson, nor was there mutual assent to a new contract.

Where the parties have stipulated to the facts, the only question for this court is "whether the trial court drew the proper legal conclusion from the facts." *Quaker Oats Co. v. Stanton,* 96 S.W.3d 133, 137 (Mo.App.2003). The court found that the March 11 employment agreement was a legally enforceable, bilateral contract for at-will employment, citing *Panther v. Mr. Good–Rents, Inc.,* 817 S.W.2d 1, 3 (Mo. App.1991). The trial court found that the Board sought to unilaterally terminate that contract. The court further found that Mr. Stephenson's only employment with the Village was by the terms of that contract and that the Board had, by passage of Resolution 72, terminated that agreement and, thus, Mr. Stephenson's

employment. The Village was repudiating the negotiated contract and offering a new contract.

The court found that Mr. Stephenson, "on March 8, 2004, had a good faith and reasonable belief" that his employment was terminated. On March 9, 2004, Mr. Stephenson was no longer employed under the old March 11 employment contract, nor was he employed under the new employment contract, nor was he employed as a non-contractual employee.

The court concluded that Paragraph 8.1 of the March 11 employment agreement was a "negotiated severance clause," and that Mr. Stephenson had relied upon that severance clause in entering and continuing to serve as the Village's Fire Chief. The court held that Stephenson's employment was terminated for no cause or fault on his part by the passage of Resolution 72. The court found that Stephenson, therefore, was entitled to the benefits of that severance clause.

In granting Stephenson's motion for summary judgment, the court relied primarily upon the Missouri Supreme Court case of *Hinkeldey v. Cities Service Oil Company,* 470 S.W.2d 494 (Mo.1971). *Hinkeldey* involved a breach of contract lawsuit brought by seven ex-employees against a former employer for failure to grant severance pay. *Id.* at 495. Cities Service denied severance pay because the plaintiffs were offered employment with the company that bought out Cities Service, and, thus, were not really out of work. *Id.* Many of those jobs required the plaintiffs to move to other cities or go into new lines of work, however, and their salaries would be subject to revision up or down after six months. *Id.* at 498. The plaintiffs found these conditions unacceptable, refused employment with the new company, and were denied severance pay. *Id.*

Pertinent to this case, the Court held that a management-approved document relating to severance pay constituted an enforceable bilateral contract and that the plaintiffs had continued in service based on that document. *Id.* at 501. Because there was an enforceable bilateral contract, the granting or withholding of severance pay "was not optional." *Id.* "[S]everance pay is not a gratuity which may be allowed or disallowed arbitrarily, but is a contractual obligation." *Id.* To deny these employees severance pay on the basis that they were "not really" out of work "ignores the existence of a contractual duty, breach of which cannot be excused on the ground that it would be reasonable to do so," the Court held. *Id.* at 501.

Here, too, the Village seeks to ignore its contractual duty to pay Mr. Stephenson severance pay on the basis that the five-year severance provision is unreasonable. As explained in *Hinkeldey,* this is not a basis for avoidance of the terms of the contract. *Id.* The Village's desire that Mr. Stephenson sign a new agreement that it considered more reasonable does not justify its action of unilaterally terminating his employment when he did not sign the new agreement.

### The Village's Arguments

The Village advances several arguments to support its claim of error. None of those arguments are fully developed; therefore, they are both difficult to interpret and unpersuasive. Most of the arguments are unsupported by legal authority or the record, and some verge on being nonsensical.

 The Village first claims that passage of Resolution 72 did not terminate Mr. Stephenson's employment because the March 11 contract that the resolution declared void did not encompass all the terms of employment, including "the very

existence of the employer-employee relationship." The Village cites no legal authority that supports this argument. The parties' joint stipulation included the statement that on March 11, 2003, the parties entered into a "bilateral employment contract *employing plaintiff* as Fire Chief of defendant Village of Claycomo." (Emphasis added.) The court found that Mr. Stephenson's "only employment" with the Village was by the terms of the March 11 agreement and that termination of that agreement necessarily terminated his employment. We fail to see any error in the trial court ruling. *See Hinkeldey,* 470 S.W.2d at 501 (where there is an enforceable bilateral contract for employment including severance pay, the contract may not be unilaterally repudiated).

 The Village next claims that Resolution 72 did not *immediately* terminate Mr. Stephenson's employment, because the resolution gave him thirty days to accept the proposed employment agreement. Thus, the Village suggests, he continued to be employed for at least that thirty-day period, and he voluntarily quit by not returning to work on March 9. This argument, too, is unsupported by legal authority and is devoid of merit. The thirty-day period was without significance, as it related only to the effective date of the proposed new contract, which was never accepted by Stephenson. The Board terminated Stephenson's employment on March 8th by declaring his contract "void and for naught." A party to a contract is obviously released from the contract when the other party repudiates it without legal justification.

 The Village complains that the court erred in relying on extrinsic evidence to construe the March 11 employment contract, citing *Daniels Express & Transfer Co. v. GMI Corp.,* 897 S.W.2d 90, 92 (Mo.

App.1995) (if there is no ambiguity in the language of a contract, it must be enforced according to its terms without construction to determine the intent of the parties). Here, the Village says, the court considered both the earlier agreement and the proposed agreement in addition to the March 11 agreement "without making any finding that the [March 11] employment agreement was ambiguous as a matter of law and in contradiction to the plain and unambiguous language of [that] agreement." We fail to see that the court considered these contracts in any other than background context. We fail to see that the March 11 agreement was ambiguous or that the trial court resorted to extraneous sources in interpreting the contract.

The Village contends, for the first time in its reply brief,[2] that Resolution 72 was necessary because the March 11 contract was unenforceable and invalid, in that it was an "unlawful attempt to bind successor Boards" by forcing them to keep the plaintiff employed indefinitely. The Village relies upon a South Carolina case to support this claim. *See Piedmont Pub. Serv. Dist. v. Cowart,* 319 S.C. 124, 459 S.E.2d 876, 880 (S.C.App.1995) (stating that a contract involving legislative functions or governmental powers of a municipal corporation is not binding on successor boards or councils). In that case, although there was a five-year severance provision, the real point of contention was that the employment contract was for a definite term of twenty years, which the court found to be unreasonable and against public policy. *Id.* at 882–83.

Here, there was no set term of employment. The trial court properly found that the employment agreement was a contract for the employment to continue until ter-

minated in accordance with contract provisions, subject to the severance provisions. The Village fails to provide authority for the notion that it was not obligated to comply with the provisions of the severance clause for which they had contracted. *See Hinkeldey,* 470 S.W.2d at 501; *Gerson v. Diamond Shamrock Corp.,* 710 S.W.2d 368, 369–70 (Mo.App.1986).

Another new argument raised in the reply brief refers to Paragraph 10 of the March 11 contract, in which the parties had agreed to "negotiate a substitute" if any of the contract's terms or provisions were "held unlawful or invalid by any court, agency, or board of competent jurisdiction." According to the Village, the Board's passage of Resolution 72 did just that; therefore, Mr. Stephenson was bound by the provision to negotiate new terms in good faith. We cannot agree with the Board's proposition that it had the authority (as a "board" or "agency") to declare its own contract "unlawful or invalid." We believe the obvious meaning of "court, agency, or board of competent jurisdiction" referred to legal entities other than the parties to the contract.

The trial court did not err as a matter of law in granting summary judgment on the basis that Mr. Stephenson's employment was terminated by passage of Resolution 72.

Point denied.

### Point II

In Point II, the Village contends that the trial court erred in ordering them to make payments under the provisions of Paragraph 8.1 of the employment agreement, because "that was an improper rem-

---

**2.** Mr. Stephenson asks this court to strike the Village's reply brief, in part, because it raises new arguments. Because the new arguments in the reply brief are without merit, we deny the motion to strike.

edy on plaintiff's petition for breach of contract." Again, the point relied on cites no legal basis for this claim of error.

Paragraph 8.1 provides that if Mr. Stephenson is terminated and the termination is determined to be "not for cause":

> [He] shall be *immediately entitled* to a[ ] one time payment in the amount equal to five (5) years of his annual gross salary, [plus certain benefits] or he shall have the option of being reinstated to his position.

(Emphasis added.) The court found that this constituted a "negotiated severance clause," and that Mr. Stephenson had relied upon that clause in entering into and continuing employment as the Village's Fire Chief. The court held that the Village, as an "at-will" employer, had a right to terminate Mr. Stephenson's employment and suffer no damages for the termination, but that it did not have the right to not comply with a negotiated severance clause. *See Hinkeldey,* 470 S.W.2d at 501. At a later hearing, the court heard evidence as to damages and on September 20, 2006, awarded five years of salary and benefits to Mr. Stephenson in severance pay.

The Village complains that the damages award amounted to a grant of "specific performance" as opposed to the damages prayed for in the petition for breach of contract. A request for specific performance, the Village says, is distinct from a claim for breach of contract, and an award of specific performance requires a claim or finding that the plaintiff could not receive

an adequate remedy at law, citing *Laclede Gas Co. v. Amoco Oil Co.,* 522 F.2d 33, 39–40 (8th Cir.1975). No such finding was made here, the Village complains.

Again, this argument is not fully developed and is somewhat unclear. In Mr. Stephenson's petition, he claimed that because he was terminated without cause, he was entitled to the benefits and payments provided for in Paragraph 8.1 of his employment contract. He made demand upon the Village for those payments, but the Village refused to honor its contractual obligation to pay him. He therefore prayed for damages for breach of contract in the amount set out in Paragraph 8.1. The September 20 Judgment for damages states in part: "Now on this 10th day of August, 2006, the parties present evidence as to damages incurred as a result of the breach of contract." Thus, the trial court did not grant any unpleaded request for specific performance but, instead, awarded damages for the Village's breach of contract in refusing to pay severance pay after terminating Mr. Stephenson.

Point denied.

### Conclusion

For the foregoing reasons, the judgment is affirmed.