# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Stephen P. Donohue, Appellant,

v.

City of North Augusta, the Mayor and City Council of North Augusta, Respondents.

Appellate Case No. 2014-002235

---

Appeal from Aiken County
J. Ernest Kinard, Jr., Circuit Court Judge

---

Opinion No. 27530
Heard May 5, 2015 – Filed June 17, 2015

---

## AFFIRMED IN PART AND REVERSED IN PART

---

James D. Mosteller, III, of Mosteller Law Firm, LLC, of Barnwell, for Appellant.

Belton Townsend Zeigler, Gary Tusten Pope, Jr., and Charles Douglas Rhodes, III, all of Pope Zeigler, LLC, of Columbia, and Kelly F. Zier, of Zier Law Firm, of North Augusta, for Respondents.

---

**JUSTICE PLEICONES:** This is an appeal from a circuit court order upholding the validity of an ordinance amending respondent City of North Augusta's (City's) 1996 Tax Increment Financing District (TIF) ordinance and finding that

respondents Mayor and City Council[1] did not violate the Freedom of Information Act (FOIA).[2] We affirm the order to the extent it upholds the ordinance, but reverse the finding that respondents did not violate the FOIA, and remand that issue with instructions.

## FACTS

Appellant is a resident of North Augusta. He brought this action to challenge the validity of Ord. No. 2013-19 which amended Ord. No. 96-10. The 1996 ordinance created a TIF[3] within the Redevelopment District[4] created in 1991 by respondents' Resolution 91-06. He also challenged respondents' compliance with the Freedom of Information Act[5] (FOIA) between January 2013 and September 2013.

## ISSUES

1) Was Ord. No. 2013-19 adopted in compliance with S.C. Code Ann. § 31-6-80(F)(2) (Supp. 2014)?

2) Did respondents violate the requirement in S.C. Code Ann. § 30-4-70 (2007) that they announce the specific purpose of Council's executive sessions?

## ANALYSIS

### I. Validity of Ord. No. 2013-19

In 1996, respondents adopted an ordinance creating a Redevelopment Plan to revitalize the City's riverfront and the adjacent areas. In 2013, City Council adopted an ordinance amending the Redevelopment Plan to allow the City to proceed with "Project Jackson." This project involves an as yet undeveloped

---

[1] Hereafter, we refer to respondents collectively.

[2] S.C. Code Ann. §§ 30-4-10 *et seq.* (2007).

[3] *See* S.C. Code Ann. §§ 31-6-10 *et seq.* (2007 and Supp. 2014). The TIF Act authorizes municipalities "to incur indebtedness to revitalize blighted and deteriorating areas" within their city limits. *See Wolper v. City Council of City of Charleston*, 287 S.C. 209, 212, 336 S.E.2d 871, 873 (1985).

[4] *See* S.C. Code Ann. §§ 31-10-10 *et seq.* (2007).

[5] Specifically, S.C. Code Ann. § 30-4-70 (2007).

parcel of riverfront property where commercial activities, including brick works, had been located. The proposed project includes a minor league baseball stadium, a convention center, parking decks, a YMCA, a 200 room hotel, and assorted commercial buildings. The 2013 ordinance both extended the duration of respondents' Redevelopment Plan and the associated TIF Bonds[6] and increased the amount of the estimated Bond Issuance to finance the Plan.[7]

Appellant acknowledges the TIF Act authorizes amendment of the Redevelopment Plan ordinance, but contends that the City did not comply with the statutory requirements of S.C. Code Ann. § 31-6-80(F) (Supp. 2014). Subsections (F)(1) and (2) provide:

> (F)(1) Subsequent to the adoption of an ordinance approving a redevelopment plan pursuant to Section 31-6-80, the municipality may by ordinance make changes to the redevelopment plan that do not add parcels to or expand the exterior boundaries of the redevelopment project area, change general land uses established pursuant to the redevelopment plan, change the proposed use of the proceeds of the obligations in relationship to the redevelopment plan, or extend the maximum amount or term of obligations to be issued under the redevelopment plan, in accordance with the following procedures:
>
> > (a) The municipality must provide notice of the proposed changes by mail to each affected taxing district. The proposed changes shall become effective only with respect to affected taxing districts that consent to the proposed changes by resolution of the governing body of the taxing districts.
> >
> > (b) The municipality must publish notice of the adoption of the ordinance in a newspaper having general circulation in the affected taxing districts. Any interested party may, within twenty days after the date of

---

[6] The Plan's end date was extended from December 5, 2016, to November 18, 2048.

[7] The amount was increased from $13.4 million to $55 million.

publication of the notice of adoption of the redevelopment plan, but not afterwards, challenge the validity of the adoption by action de novo in the court of common pleas in the county in which the redevelopment plan is located.

(2) Subsequent to the adoption of an ordinance approving a redevelopment plan pursuant to Section 31-6-80, the municipality may by ordinance make changes to the redevelopment plan that adds parcels to or expands the exterior boundaries of the redevelopment project area, to general land uses established pursuant to the redevelopment plan, to the proposed use of the proceeds of the obligations in relationship to the redevelopment plan, or to extend the maximum amount or term of obligations to be issued under the redevelopment plan, in accordance with the procedures provided in this chapter for the initial approval of a redevelopment project and designation of a redevelopment project area.

At issue here is the meaning of the last clause of subsection (F)(2) which requires the amendatory ordinance be enacted "in accordance with the procedures provided in this chapter for the initial approval of a redevelopment project and designation of a redevelopment project area."

Appellant contends the final clause of § 31-6-80(F)(2) requires respondents to redetermine that the property affected by the amended ordinance meets the criteria set forth in § 31-6-80(A)(7) (Supp. 2014). He argues respondents were required to hear evidence and then state their § 31-6-80(A)(7) findings[8] in Ord. No. 2013-19.

_____

[8] This subsection requires:

(7) findings that:

(a) the redevelopment project area is an agricultural, blighted, or conservation area and that private initiatives are unlikely to alleviate these conditions without substantial public assistance;

(b) property values in the area would remain static or decline without public intervention; and

The circuit court held that when a redevelopment ordinance is amended to increase the amount of bonds and to extend the time to repay them, § 31-6-80(F)(2) does not require updated or additional findings of blight, declining or static property values, etc., as are required in the original ordinance by § 31-6-80(A)(7). The court held the statutory language in § 31-6-80(F)(2) providing that a "municipality may by ordinance make changes to the redevelopment plan . . . . in accordance with the procedures for the initial approval" refers only to the procedural requirements, i.e. public notices and hearings found in § 31-6-80(B)-(D), and not to the substantive requirements found in § 31-6-80(A)(7). We agree.

Section § 31-6-80(F) permits a municipality to amend a Redevelopment Plan. Subsection (F)(1) is concerned with relatively minor changes, and in those cases provides for a simplified procedure requiring only notice to affected taxing districts and public notice of the adoption of the amended ordinance. While (F)(1) creates a truncated process for relatively minor changes, (F)(2) specifies that the procedural requirements attendant to the enactment of the original ordinance, and not the shortened process allowed in (F)(1), must be met when a more substantial change to the Redevelopment Plan is contemplated. Since we agree with the circuit court that (F)(2) requires only procedural compliance with § 31-6-80(B)-(D), and since there is no contention that respondents failed to meet these requirements, we affirm that part of the order which upholds the validity of Ord. No. 2013-19.[9]

## II. FOIA Violations

Appellant contends that the circuit court erred in finding that between January and September 2013 respondents complied with the FOIA's requirement that "the specific purpose of the executive session"[10] be announced in open session. The circuit court held an announcement that the purpose of the executive session was

---

        (c)  redevelopment is in the interest of the health, safety, and
        general welfare of the citizens of the municipality.

[9] In light of this ruling, we do not address the additional grounds upon which the circuit court upheld the ordinance. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 518 S.E.2d 591 (1999).

[10] S.C. Code Ann. § 30-4-70(b) (2007).

the discussion of a "proposed contractual matter" satisfied the specific purpose requirement.  We agree with appellant that the FOIA was violated.

Section 30-4-70(a) (2007) allows a public body to hold a closed meeting for any one of five reasons.  If such a closed executive session is to be held, its "specific purpose" must be announced in the open session.  "Specific purpose" is defined by statute as:

> a description of the matter to be discussed as identified in items (1) through (5) of subsection (a) of this section.  However, when the executive session is held pursuant to Sections 30-4-70(a)(1) or 30-4-70(a)(5), the identity of the individual or entity being discussed is not required to be disclosed to satisfy the requirement that the specific purpose of the executive session be stated.
>
> § 30-4-70(b).

Subsection (a)(1) covers employment matters while (a)(5) covers "Discussion of matters related to the proposed location, expansion, or the provision of services encouraging location or expansion of industries or other business in the area served by the public body."  Here, respondents did not invoke either (a)(1) or (a)(5), but rather, in each of the eleven executive sessions challenged by appellant, the minutes reflect respondents  invoked only § 30-4-70(a)(2), and merely stated that the specific purpose of the meeting was to be a "contractual matter."

In *Quality Towing, Inc. v. City of Myrtle Beach*, 345 S.C. 156, 547 S.E.2d 862 (2001), the Court was asked to determine whether the city had met the "specific purpose" requirement of the FOIA before going into executive session.  In that case, the written agenda reflected as item 4(C) "Towing-Contractual Recommendation."  When item 4(C) was reached, the City Council minutes reflect:

> C.  Towing -- Contractual Recommendation
>
> Mayor Grissom advised this matter would be discussed in Executive Session

Upon motion Councilman Cain, seconded by Councilman Woods, Council voted unanimously to go into executive session.

*Id*. at 164, 547 S.E.2d at 866. In finding this notice insufficient, Court said:

FOIA is clear in its mandate that the "*specific* purpose" of the session "*shall* be announced." (emphasis added in original opinion). Therefore, FOIA is not satisfied merely because citizens have some idea of what a public body might discuss in private. As evidenced by the minutes, the presiding officer did not announce the specific purpose of the executive session. This was a violation of FOIA.

The City argues, even if there was no "specific purpose" announced, reversal is not warranted because substantial compliance with FOIA should be found when only a technical violation has occurred, and there has been no demonstrated effect on a complaining party. *See Piedmont Pub. Serv. Dist. v. Cowart*, 319 S.C. 124, 459 S.E.2d 876 (Ct. App. 1995). However, given the history and the purpose of FOIA, this was more than a "technical violation." The statute clearly mandates the specific purpose of the session must be announced.

*Id*.

The circuit court erred in finding that respondents satisfied the FOIA's specific purpose requirement when they announced the specific purpose of the executive session in these types of general terms:

**ITEM 1.    LEGAL:    Executive Session-Request of the City Administrator**

Upon the request of the City Administrator and in accordance with Section 30-4-70 (a) (2) and on motion by Councilmember Baggott, second by Councilmember Adams, City Council unanimously voted to go into executive session for the purpose of discussion of negotiations incident to 1 proposed contractual matter.

> On motion by Councilmember McDowell, second by Mayor Jones, the executive session was adjourned. There was nothing to report out.[11]

Having found respondents violated the FOIA, we now remand the issue to determine what relief, if any, appellant is entitled to as a result of these violations. *Quality Towing*, *supra*. Since none of the challenged executive sessions related to Ord. No. 2013-19, we disagree with appellant's contention that the FOIA violations would support the invalidation of Ord. No. 2013-19. On remand, the circuit court shall limit its consideration of possible remedies to attorneys' fees and/or costs and/or prospective injunctive relief relating to future executive sessions. *See Sloan v. South Carolina Dep't of Rev.*, 409 S.C. 551, 762 S.E.2d 682 (2014).

## CONCLUSION

The circuit court's order is

**AFFIRMED IN PART AND REVERSED IN PART**.

**TOAL, C.J., BEATTY, KITTREDGE and HEARN, JJ., concur.**

---

[11] This excerpt is from the minutes of the August 5, 2013 meeting.