# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

South Carolina Coastal Conservation League, Inc., Elizabeth M. Smith, Abraham B. Jenkins, Jr., and South Carolina Public Interest Foundation, Plaintiffs,

of which South Carolina Coastal Conservation League, Inc., Elizabeth M. Smith, and Abraham B. Jenkins, Jr., are the Appellants.

v.

Charleston County, South Carolina, South Carolina Transportation Infrastructure Bank, and South Carolina Department of Transportation, Respondents.

Appellate Case No. 2020-001189

———————

Appeal From Richland County
L. Casey Manning, Circuit Court Judge

———————

Opinion No. 6050
Heard November 14, 2023 – Filed February 21, 2024

———————

## AFFIRMED IN PART, REVERSED AND REMANDED IN PART

———————

W. Andrew Gowder, Jr., of Austen & Gowder, LLC, of Charleston, and Christopher Kaltman DeScherer, of Southern Environmental Law Center, of Charleston, both for Appellants.

Robert E. Tyson, Jr. and Jasmine Denise Smith, both of Robinson Gray Stepp & Laffitte, LLC, of Columbia, for

Respondent South Carolina Transportation Infrastructure Bank.

Barbara Munig Wessinger and Linda C. McDonald, of the South Carolina Department of Transportation, and Andrew F. Lindemann, of Lindemann Law Firm, P.A., of Columbia, both for Respondent South Carolina Department of Transportation.

Michael A. Timbes, of Thurmond Kirchner & Timbes, P.A., of Charleston, and Natalie Armstrong Ham, Bernard E. Ferrara, Jr., and Edward L. Knisley, Jr., of the Charleston County Attorney's Office, all for Respondent Charleston County.

---

**HEWITT, J.:**  This is an appeal by the South Carolina Coastal Conservation League and two individuals (collectively, Appellants).  Appellants brought this case seeking declaratory and injunctive relief that would prohibit Charleston County from using "penny tax" funds for a project colloquially known as the "Mark Clark Extension."  Appellants also alleged violations of the Freedom of Information Act (FOIA).

The circuit court granted Charleston County's motion to dismiss based on the court's finding that Appellants lacked standing, their claims were time-barred, and the claims also failed on the merits.  Here, Appellants argue that they have taxpayer standing or public interest standing and that their claims were timely and adequately pled.

We affirm the circuit court's order dismissing all claims with the exception of one alleged FOIA violation.  We agree with the circuit court that the majority of Appellants' claims are barred as late protests of the referenda authorizing the taxes in question.  For different reasons, the other non-FOIA claims fail as well.  As explained below, we affirm the bulk of the order dismissing this case and reverse and remand one FOIA claim for additional proceedings.

**FACTS**

The following background is taken from Appellants' second amended complaint.  Charleston voters approved a one-half cent tax to be used for transportation and greenbelt projects in 2004.  They approved a second-half cent tax in 2016.  We will

occasionally refer to proceeds from these taxes as "penny tax funds" even though this case involves the levying and allocation of two separate one-half cent taxes.

Appellants brought this lawsuit after Charleston County, the South Carolina Department of Transportation (DOT), and the South Carolina Transportation Infrastructure Bank (the Bank) amended their three-party Intergovernmental Agreement under which the parties agreed to fund the Mark Clark Extension. In the amended agreement, Charleston County pledged penny tax revenue to fund its local match obligation for the Mark Clark Extension. Appellants claim that Charleston's pledge violated the law in two ways: first, that it violated the ordinances and referenda authorizing the two taxes; and second, that the amended agreement is an unlawful appropriation.

Appellants further claim that, in February 2019, Charleston County improperly allocated penny tax funds for the Mark Clark Extension in violation of FOIA, and that its rescinding of the February 2019 allocation also violated the executive session requirements of FOIA.

After a hearing, the circuit court granted Charleston County's motion to dismiss all claims. The court denied Appellants' motion to alter or amend the dismissal. This appeal followed.

**STANDARD OF REVIEW**

"In reviewing the dismissal of a claim for failure to state facts sufficient to constitute a cause of action under Rule 12(b)(6), SCRCP, the appellate court applies the same standard of review as the trial court." *Sloan Const. Co. v. Southco Grassing, Inc*., 377 S.C. 108, 112, 659 S.E.2d 158, 161 (2008), *holding modified by Shirley's Iron Works, Inc. v. City of Union,* 403 S.C. 560, 743 S.E.2d 778 (2013). The court must resolve every doubt in a light most favorable to the nonmovant to determine whether the facts alleged on the face of the complaint state "any valid claim for relief." *Id*. at 112-13, 659 S.E.2d at 161(citing *Plyler v. Burns,* 373 S.C. 637, 645, 647 S.E.2d 188, 192 (2007)). Dismissal based on Rule 12(b)(6) is improper when "facts alleged and inferences reasonably deducible therefrom would entitle the plaintiff to any relief on any theory of the case." *Id.* at 113, 659 S.E.2d at 161 (quoting *Stiles v. Onorato,* 318 S.C. 297, 300, 457 S.E.2d 601, 603 (1995)).

The court typically evaluates a pleading by focusing on the pleading itself, but review is expanded and may include other documents when a plaintiff attaches documents to the complaint and incorporates them by reference. *Brazell v. Windsor*, 384 S.C. 512, 516, 682 S.E.2d 824, 826 (2009). The 2019 amended agreement, the

enabling ordinances, and the 2004 and 2016 referenda ballot questions were attached as exhibits to the second amended complaint. For that reason, we have considered those documents here.

**ELECTION CHALLENGE**

The statutes authorizing the penny tax are found in Chapter 37 of Title 4 of the South Carolina Code. Counties may impose this tax after adopting an enabling ordinance that voters approve by referendum. *See* S.C. Code Ann. § 4-37-30(A)(1) (2021). Charleston voters approved the first-half cent tax in 2004 and the second-half cent tax in 2016.

The enabling statute requires that each ordinance identifies the transportation related projects that will be funded by the tax proceeds if the referendum on the ordinance is successful. § 4-37-30(A)(1)(a)(i)-(iii). Each enabling ordinance must also identify the listed project's anticipated cost and timeline for completion. § 4-37-30(A)(1)(a)-(b). Appellants' primary argument to the circuit court, and to this court, is that Charleston County may not spend penny tax dollars on the Mark Clark Extension because that project was not listed in either the 2004 or 2016 ordinances and was therefore not contemplated in the referenda that voters approved.

We agree with the circuit court that this argument is an untimely challenge to both the 2004 and 2016 elections, when the voters approved the penny taxes.

Charleston voters approved broad language in 2004 and 2016. Though the 2004 ordinance listed a number of transportation related projects that the proposed tax would fund, it also explained the penny tax proceeds would go to "financing the costs of highways, roads, streets, bridges, and other transportation-related projects, facilities, and drainage facilities related thereto, and mass transit systems operated by Charleston County or jointly operated by the County and other governmental entities . . . ." The 2016 ordinance and referendum similarly explained that penny tax proceeds would fund transportation projects that "may include, but [were] not limited to "various projects of regional and local significance.

State election law requires any protest or contest of a countywide election be filed by noon on the Wednesday following the election's certification. S.C. Code Ann. § 7-17-30 (2019). The deadlines to challenge these referenda passed long ago. Appellants may not now argue that the broad language approved by Charleston voters does not comply with the enabling statute. As Appellants' second amended complaint recognized, the referenda authorized the collection of taxes far in excess of the amount required to fund the projects listed in the enabling ordinances, and the

ordinances advertised that the list of projects was not exclusive. These were known and knowable at the time the ordinances were adopted and at the time of the referenda elections. Thus, this challenge is untimely.

History and context bolster this reasoning. The 2004 referendum that Charleston voters approved came about after our supreme court invalidated a 2002 referendum on the same subject matter. *W.J. Douan v. Charleston Cnty. Council*, 357 S.C. 601, 594 S.E.2d 261 (2003). There, our supreme court held that the printed instructions to voters that appeared on the ballot were not neutral and that this affected the fundamental integrity of the election. *Id*. at 612, 594 S.E.2d at 266. Unlike this case, that case began as a timely protest to the election. *Id*. at 606, 594 S.E.2d at 263. If the deadline for an election protest is to mean anything, it must mean that Appellants cannot now claim, as they do in their complaint, that "the referenda and ordinances that authorized [the taxes in question] do not comply with [the enabling statute]." The alleged deficiencies that Appellants point to in the ordinances and referenda ballot questions were apparent at the time of the adoption of the ordinance and the referenda elections and were ripe for challenge then.

Appellants also urge the court to apply the "Contract with the Voters Doctrine," arguing that at various times Charleston County councilmembers assured the public that penny tax funds would not be used to fund the Mark Clark Extension. Long-settled precedent establishes that this is not a viable claim—if political bodies or office holders renege on their public positions, it is not for the court to mandate compliance, and the voter's best recourse is at the ballot box. *See, e.g.*, *State v. Whitesides*, 30 S.C. 579, 585, 9 S.E. 661, 663 (1889) ("And, even without this expressed desire, there is high authority for saying that such legislation would be valid with or without the consent of the people, the only check to an unwise exercise thereof, as we have said above, being, not the courts, but the intelligence of the general assembly and the ballot-box."); *see also, e.g.*, *Sarrat v. Cash*, 103 S.C. 531, 88 S.E. 256 (1916) (addressing the allegation that voters approved a bond referendum based on representations made by public officials that a school would be built in a specific location, but upon passage, the school trustees decided to build the school elsewhere; further finding that the trustees had a right to exercise discretion).

Based on this reasoning, and in light of the fact that using penny tax funds for the Mark Clark Extension fits plainly within the broad language presented to and approved by Charleston voters, the circuit court correctly dismissed this claim as one for which relief could not be granted.

## INTERGOVERNMENTAL AGREEMENT

Appellants claim the 2019 amended agreement between Charleston County, DOT, and the Bank illegally binds future councils and is an improper contracting of a legislative governmental power (budgeting), as opposed to proprietary power (business dealings). As noted earlier, the amended agreement was attached to Appellants' pleading. The terms of the agreement and the controlling law lead us to the conclusion that this claim was properly dismissed.

The test that controls this court's inquiry of whether an action is legislative or business in nature is whether the contract in question "deprives a governing body, or its successor, of a discretion which public policy demands should be left unimpaired." *City of Beaufort v. Beaufort-Jasper Cnty. Water & Sewer Auth*., 325 S.C. 174, 180, 480 S.E.2d 728, 731 (1997) (quoting *Piedmont Pub. Serv. Dist. v. Cowart*, 319 S.C. 124, 133, 459 S.E.2d 876, 881 (Ct. App. 1995)).

We see the amended agreement as a straightforward business function of Charleston County. The plain terms of the agreement do not deprive future county councils of budgetary discretion. In pertinent part, the agreement contains a pledge by Charleston County to pay its share of the future costs for the Mark Clark Extension from penny tax proceeds, "or any lawful source," and provides that the county council will adopt future budgets to fund its payment obligations under the agreement. It is evident that this is not an actual appropriation, but rather an agreement to make future appropriations with funds from the penny tax or any other lawful source. Equally evident is that the agreement does not mandate that future councils spend a specific amount of funds each year on the Mark Clark Extension. Therefore, the agreement does not bind the legislative budgetary function of future councils.

Furthermore, the Transportation Infrastructure Bank Act explicitly contemplates this type of agreement. *See* S.C. Code Ann. §§ 11-43-120, -180, & -190 (2021) (explaining the Act's purpose as financing "major" projects, authorizing the Bank to require borrowers to enter agreements, and authorizing borrowers to pledge revenues to fulfill their obligations). If this type of agreement were an illegal allocation, it would be impossible for the State, the Bank, and local governments to carry out the sort of complex, multi-year transportation projects the Act specifically contemplates.

## THE FEBRUARY 2019 APPROPRIATION

The claim that Charleston County violated the law by appropriating penny tax funds at a February 2019 meeting is not preserved for our review. The circuit court did

not specifically rule on this issue in the order dismissing this case. This omission was the sole argument Appellants raised to the circuit court in their motion to reconsider. The court denied the motion to reconsider because Appellants did not provide the court with a copy of the motion within ten days, as required by Rule 59(g), SCRCP. The court cited our decision in *Smith v. Fedor*, which involved the exact same error, as support for its ruling. 422 S.C. 118, 126, 809 S.E.2d 612, 616 (Ct. App. 2017).

If a party has raised an issue and the circuit court has not ruled upon it, a motion to alter or amend is required to preserve the issue for appellate review. *Great Games, Inc. v. S.C. Dep't of Revenue*, 339 S.C. 79, 85, 529 S.E.2d 6, 9 (2000). An unaddressed issue remains unpreserved when a motion to reconsider is denied on the basis of procedural defect under Rule 59(g). *Fedor*, 422 S.C. at 126, 809 S.E.2d at 616 ("Because the trial court did not err in denying [plaintiff's] motion for reconsideration, the arguments presented in that motion are unpreserved."). It was within the circuit court's discretion to deny the motion to reconsider for failing to comply with Rule 59(g). Because this resulted in the circuit court never having ruled on the claim involving the February 2019 appropriation, that claim is not preserved for appeal.

**FOIA**

The final pair of claims we address are the alleged FOIA violations. Appellants allege Charleston County Council's special finance committee violated FOIA when it went into executive session and when the committee subsequently voted to rescind an earlier appropriation following that executive session. Appellants argue the announced reason for going into executive session was improper and that the committee failed to give proper notice to the public of a potential vote. As explained below, the claim related to the reason for executive session was properly dismissed, but Appellants have alleged sufficient facts to maintain their claim that Charleston County gave insufficient notice that the committee would take official action after the executive session.

FOIA allows executive session for the discussion of legal advice related to pending litigation. S.C. Code Ann. § 30-4-70(a)(2) (Supp. 2023). Though the printed agenda listed the reason for the executive session as "Transportation Sales Tax Budget," Charleston County was in active litigation related to the penny tax and its transportation budget at the time of this meeting. The Charleston County attorney announced that the purpose of the executive session was for the county to receive legal advice related to that litigation. Precedent suggests the announced purpose before the executive session began was sufficient to satisfy FOIA's requirement that

a public body disclose the "specific purpose" of any executive session. *Compare Donohue v. N. Augusta*, 412 S.C. 526, 532–33, 773 S.E.2d 140, 143 (2015) (noting that vague statements like "contractual matter" or "contractual recommendation" are insufficient topics for closed session). We emphasize that this analysis does not venture beyond Appellants' pleading. The announced reasons the Charleston County attorney gave for the executive session are taken from Appellants' second amended complaint and, facially, the county adequately announced this session.

Immediately after returning from the executive session, the special finance committee voted to reallocate penny tax dollars without any public debate. We read the relevant precedent to hold that any vote pursuant to matters discussed in executive session must be announced in advance. *Brock v. Town of Mount Pleasant*, 415 S.C. 625, 631, 785 S.E.2d 198, 202 (2016) ("[I]n special meetings, 'nothing can be done beyond the objects specified for the call.'") (citation omitted). As pled, this case fits squarely within *Brock*, which held that any action taken by a public body must be properly noticed and that "it is sufficient for the agenda to reflect that, upon returning to open session, action may be taken on the items discussed during the executive session." *Id*.

Charleston County urges us not to reach this issue because it subsequently rescinded the reallocation action it took after executive session, making the FOIA violation moot. This argument would require us to venture beyond Appellants' pleading and its supporting documents. As already noted, our standard of review does not permit us to accept that invitation. Therefore, the dismissal of this claim and the corresponding claim for attorneys' fees are reversed and remanded.

## CONCLUSION

The circuit court's order of dismissal is affirmed for all claims with the exception of Appellants' FOIA claim related to the vote taken after the special finance committee returned from executive session and the claim for attorneys' fees attributable to that claim, should they prevail. The dismissal of those claims is reversed and remanded.

**WILLIAMS, C.J., and VERDIN, J. concur.**